## JOE E. FRANTZ v. STATE.

No. A-9675.   Sept. 11, 1940.
(105 P. 2d.)

R. F. Shutler, of Kingfisher, and Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and William O. Breedlove, Co. Atty., of Kingfisher, for the State.

BAREFOOT, J. Defendant was charged in Kingfisher county with the crime of operating a motor vehicle upon the public streets of the "City of Kingfisher, Kingfisher County, Okla., while under the influence of intoxicating liquor"; was tried, convicted, and sentenced to pay a fine of $400 and costs, and has appealed.

The facts, as revealed by the record in this case, were that defendant, who was a nephew of a former Territorial

Governor, Frank Frantz, was formerly a resident of Enid, Okla., but for two years prior to the 25th of November, 1937, was a resident of Kingfisher, Kingfisher county, where he was holding the position of master timekeeper for the Works Progress Administration. He was unmarried, and had a cabin located near the city limits, which was his home. On the 25th day of November, 1937, which was Thanksgiving Day, he attended a football game in Kingfisher, in company with a young lady. While in attendance at the game he had two drinks. This was about the middle of the afternoon. After the game he proceeded to his camp cottage. On the way he was asked by friends to come to their home and have sandwiches that evening. He, with two of his friends, and the young lady, remained at his cottage until about 7 p. m., when he started in his automobile with the intention of seeing a friend on the way. The other parties had left his cabin and he was driving alone. He went by a drugstore, which was on Main street, and on U. S. Highway No. 81, for the purpose of securing a package of cigarettes. He honked and was waited on while sitting in his car. He immediately drove south on Highway No. 81 for two blocks, and turned west on Highway No. 33 for two blocks, and turned south. When he turned south he saw the lights of a car that seemed to be following him. He stopped his car and honked, thinking that someone in the car desired to see him, and that they would drive up alongside. They did not do so, and he started his car, and had gone about 100 feet when he heard a signal and stopped, and a member of the Highway Patrol approached him and asked him, "What kind of liquor had he been drinking", and whether he had any liquor in his car. Defendant was ordered out of his car, and his person and his car were searched by the two members of the Highway Patrol, but no intoxicating liquor of any

kind was found, either on the person of defendant or in his car. One of the patrolmen got in his car, and drove with him to the jail, and he was placed therein. The charge filed in this case was the outgrowth of his arrest.

The evidence of the two patrolmen was that they had become patrolmen in June, 1937, and were stationed at Kingfisher. That they had gone on duty about 6 p. m., and had been informed by a policeman of Kingfisher that some one had told them that defendant had left the ball game intoxicated, and for them to locate him and pick him up. That they saw the chief of police, Mr. Ahern, and he informed them that defendant was sitting in his car in front of the Jones Drug Store. That they saw defendant there, but did not arrest him, as they stated, because they had no right to do so, as he had done nothing to violate the law. However, when he started in his car as above outlined they followed him. They followed him, and came to the conclusion that his car had weaved from one side of the street to the other, and they stopped him and arrested him under the circumstances above outlined.

They further testified that in their opinion he was under the influence of intoxicating liquor at the time of his arrest; that he staggered and talked like one that was under the influence of liquor, and they considered it unsafe for him to drive a car.

When defendant was placed in jail he requested that a doctor, whom he knew, be called to see him. This request was not granted, but a member of the Highway Patrol, who had arrested him, called another doctor, whom they had been directed to call in cases of this character.

This doctor testified that he saw defendant and smelled liquor on his breath, and that in his opinion he was under the influence of intoxicating liquor. That defendant was

talking and acting like a man who was under the influence of liquor, and that he was of the opinion that he was.

The jailer, who saw defendant, testified to about the same state of facts.

The defendant, testifying in his own behalf, admitted taking two drinks about the middle of the afternoon. He denied that he had taken any other liquor, and denied that he was under the influence of intoxicating liquor. He testified that he had never before been arrested or convicted of any crime. He also testified that his car did not weave in any way, and that the only cause for going out of its natural course was that he lighted a cigarette which he had bought at the drugstore. He also testified that he at no time drove over 15 or 20 miles an hour, and the highway patrolmen corroborated this statement. He at no time violated any highway or traffic law.

The young lady who accompanied him to the football gave testified as a witness for defendant. She was with him until about 7 p. m., just before he was arrested, when she left and accompanied her mother to a Thanksgiving dinner at her grandfather's. She testified that defendant was not under the influence of intoxicating liquor when he drove from the football game, and when she left him about 7 p. m. That the only drinking she saw was when he took the two drinks between "halves" at the football game.

The above statement fairly states the evidence as shown by the record and without going into too much detail.

It is contended by defendant that under the above facts the defendant was wrongfully convicted:

First. That the evidence was procured in violation of defendant's constitutional rights, and upon an improper and unlawful search and seizure of defendant.

Second. By reason of certain improper and incompetent questions of the county attorney, and the introduction of certain incompetent evidence.

Third. That the verdict of the jury, the judgment and sentence of the court was excessive, and was given and imposed as the result of passion and prejudice on the part of the jury.

These assignments of error may well be considered together.

During the trial of this case, and while defendant was on the witness stand, he was asked by the county attorney, "If he had ever been warned" by an officer. Counsel for defendant objected to this question, and his objection was overruled. The county attorney again asked the defendant if he had ever been warned by an officer, to which defendant replied, "Warned about what?" The county attorney said, "About some possible violation". At this juncture the trial court said: "I don't think you better proceed any further with that." The county attorney then asked the witness, "And you testified you have never been convicted of a crime?" The defendant replied he had so testified, and then the county attorney asked, "I will ask you if after you were arrested, you didn't go down to the justice of the peace court, in the preliminary examination and plead guilty?" This question was highly improper and incompetent. It was objected to by counsel for defendant, and after a hearing at the judge's bench, and out of the hearing of the jury, the objection was sustained by the court, and counsel for defendant made a motion to grant defendant a mistrial. This motion was overruled, and at the request of counsel the court instruc-

ted the jury that the question propounded by the county attorney with reference to proceedings had on arraignment in the justice court was withdrawn from their consideration, and that they were directed not to consider the same or permit it to enter into their deliberations. Under ordinary circumstances the sustaining of the objection to the above question, and directing the jury not to consider same, would be sufficient reason for a refusal to reverse the judgment of the court and jury. We have so held. Haithcock v. State, 63 Okla. Cr. 276, 74 P. 2d 641; Hooper v. State, 7 Okla. Cr. 43, 121 P. 1087; Coleman v. State, 6 Okla. Cr. 252, 253, 118 P. 594; Ray v. State, 35 Okla. Cr. 322, 250 P. 438. But in construing this proposition it occurs to us that the question should be viewed in the light and circumstances of each individual case. In a case where the evidence was convincing and certain it might not constitute error; in a case where the evidence was not only conflicting but doubtful, this question might have a great influence with the jury when asked in their presence. It is provided by section 2961, Okla. St. 1931, O. S. A., title 22, § 517, as follows:

"The court may, at any time before judgment, upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted."

Under this statute there is no question but that a defendant has the right to withdraw any plea of guilty he may have entered and enter a plea of not guilty prior to his trial. In construing this statute this court has held that when the plea of guilty is withdrawn and a plea of not guilty entered, it is error to permit proof at the trial of the prior entering of the plea of guilty, where it was withdrawn.

In the case of Heath v. State, 23 Okla. Cr. 382, 214 P. 1091, 1093, in an opinion by Judge Doyle, the court said:

"Upon a plea of guilty, no trial upon the question of the defendant's guilt can be had. His plea stands in the place of the verdict of a jury finding him guilty, and for this reason we think that a withdrawn plea of guilty, for which, by authority of law and of the court, a plea of not guilty is substituted, would not be admissible in evidence against the defendant as a confession nor as an admission against interest. In our opinion the rule supported by reason and authority is that a withdrawn plea of guilty, for which a plea of not guilty is substituted by authority of court, is not admissible in evidence against the defendant."

In the above case the plea of guilty was entered in the minutes of the court clerk's office. Here it was at the preliminary examination. The only difference in the Heath Case and the case at bar is that the trial court permitted the evidence to go to the jury, and here the court sustained an objection to the same and directed the jury not to consider the same. There is some conflict of authority on the proposition of the admission of evidence of this character, but the great weight of authority and the reason which we deem best is, that such evidence is not admissible. In those cases supporting the minority rule there has generally been a strong dissenting opinion. It is our desire to call attention to a few of those cases.

In the case of Kercheval v. United States, 274 U. S. 220, 47 S. Ct. 582, 583, 71 L. Ed. 1009, this question was presented to the Supreme Court of the United States. Justice Butler delivered the opinion of the court, saying:

"Other decisions support the petitioner's contention that a plea of guilty withdrawn by leave of court is not admissible on the trial of the issue arising on the substituted plea of not guilty. Heim v. United States, 47 App. D. C. 485, L. R. A. 1918E, 87; State v. Meyers, 99 Mo. 107, 119, 12 S. W. 516; People v. Ryan, 82 Cal. 617, 23 P. 121; Heath v. State [23 Okla. Cr. 382], 214 P. 1091. And see White v. State, 51 Ga. [285] 286, 289 [290]; Green

v. State, 40 Fla. 474, 478, 24 So. 537 [11 Am. Crim. Rep. 253]. We think that contention is sound. A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. United States v. Bayaud (C. C.) 23 F. 721. But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. Com. v. Crapo, 212 Mass. 209, 98 N. E. 702. The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just. Swang v. State, 2 Cold. (Tenn.) 212; 88 Am. Dec. 593; State v. Maresca, 85 Conn. 509, 83 A. 635; State v. Nicholas, 46 Mont. 470, 472, 128 P. 543; State v. Stephens, 71 Mo. 535; People v. McCrory, 41 Cal. 458, 461; State v. Coston, 113 La. 717, 720, 37 So. 619; Bishop's New Criminal Procedure, § 747.

"The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight the court reinstated it pro tanto. Heim v. United States, supra, 493 [47 App. D. C.]. The conflict was not avoided by the court's charge. Giving to the withdrawn plea any weight is in principle quite as inconsistent with the prior order as it would be to hold the plea conclusive. Under the charge, if the plea was found not improperly obtained, the jury was required to give it weight unless petitioner was shown to be innocent. And, if admissible at all, such plea inevitably must be so considered. As a practical matter, it could not be

received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court awarding him a trial. Its introduction may have turned the scale against him. 'The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty.' White v. State, supra, 289 [290 (51 Ga.)]. It is beside the mark to say, as observed by the Circuit Court of Appeals, that petitioner knew better than any one whether or not he was guilty and that under the evidence a plea of guilty was a reasonable thing. These suggestions might bear upon the weight of admissible evidence but they have no relation to the admissibility of a withdrawn plea.

"Courts frequently permit pleas of guilty to be withdrawn and pleas of not guilty to be substituted. We have cited all the decisions, state and federal, which have come to our attention, that pass on the question here presented. The small number indicates that in this country it has not been customary to use withdrawn pleas as evidence of guilt. Counsel have cited no case, and we have found none, in which the question has been considered in English courts.

"We think the weight of reason is against the introduction in evidence of a plea of guilty withdrawn on order of court granting leave and permitting the substitution of a plea of not guilty.

"Judgment reversed."

Since this decision has been rendered it has been followed by almost all of the courts.

In the case of State v. Hook, 174 Minn. 590, 219 N. W. 926, 927, it is stated:

"In State v. Anderson, 173 Minn. 293, 217 N. W. 351, it was held error to introduce a plea of guilty which had been set aside, following the recent case of Kercheval v. United States, 274 U. S. 220, 47 S. Ct. 582, 71 L. Ed. 1009. The rule that a plea of guilty cannot be introduced in evidence against the accused after it has been withdrawn by permission of the court is well supported. See State v.

Meyers, 99 Mo. 107, 119, 12 S. W. 516; People v. Ryan, 82 Cal. 617, 23 P. 121; Heath v. State, 23 Okla. Cr. 382, 214 P. 1091; Heim v. United States, 47 App. D. C. 485 [L. R. A. 1918E, 87]. Permitting the state to make such inquiries as were made in this case is a substantial evasion of the doctrine of the Supreme Court of the United States announced in the Kercheval Case, which was the basis of our decision in the Anderson Case. There are a few cases to the contrary, but they are in the minority, and are out of harmony with the doctrine deliberately adopted in the Anderson Case. The plea, sentence, and judgment, using the language of the court in the Kercheval Case, were set at naught by the order vacating them, and their subsequent use was in conflict with the order. We are unable to separate the statement made by the defendant to the presiding judge from the rest of the vacated judicial proceeding. It should not have been used against the defendant; and it can be said that no one familiar with courtrooms could believe that the jury did not understand that a plea of guilty had been entered."

The Sixth Circuit Court of Appeals in the case of Pharr v. United States, 48 F. 2d 767, 770, announces the rule as follows:

"Error is assigned to the conduct of counsel for the government in interrogating appellant about a plea of nolo contendere that he had entered to the indictment but had withdrawn. Counsel first asked appellant if he had not entered a plea of guilt. Appellant answered: 'You say that I pleaded guilty,' to which counsel replied: 'Yes, you entered the same plea that Mr. Beauchamp did.' Appellant then said, 'I certainly have never pleaded guilty,' whereupon counsel replied: 'You pleaded nolo contendere, didn't you?' Appellant then stated he understood that was a denial of guilt, to which counsel replied, as if he were surprised or questioned the veracity of appellant: 'You understood that the plea of nolo contendere was a denial of guilt?' To this appellant answered: 'A denial of guilt.' Without having objected to the questions, counsel for appellant at this point intervened and requested the court to withdraw the jury and enter an order of mistrial.

This motion was overruled after the court had instructed the jury to disregard the questions and answers. For all practical purposes, the plea of nolo contendere is one of guilt. United States v. Norris, 281 U. S. 619, 50 S. Ct. 424, 74 L. Ed. 1076. To have permitted the government to prove that appellant had entered such a plea and withdrawn it would have been reversible error. Kercheval v. United States, 274 U. S. 220, 47 S. Ct. 582, 71 L. Ed. 1009. Although the questions and answers referred to were not objected to, the motion to discharge the jury was made in time to raise the question of error. The effect of the examination was to bring home to the jury the equivalent of a confession of guilt. Whether a reversal is required depends on whether such a fixed impression was made on the minds of the jury as to influence its verdict. Standing alone without further interpretative reference, it might have been that the questions would not have been prejudicial; but both counsel for the government and the court elsewhere in the trial treated the plea of nolo contendere as one of guilt. Proof of Beauchamp's plea had been made, and the court, in charging the jury that it could not convict appellant of aiding and abetting unless it found that Beauchamp, the principal, had violated the law, stated: 'Presumptively Beauchamp did violate the law, for the record in this case shows that in this very case he entered a plea of guilty, or nolo contendere, and was sentenced by this court.' Moreover, counsel for the government, in his concluding argument, stated that Beauchamp, 'indicted with' appellant, had 'entered a plea * * * and served his sentence.' These statements served to emphasize the improper conduct of counsel, and in such circumstances we cannot think that the admonition of the court had the effect of removing the harmful impression made by the inadmissible facts. Because of this misconduct on the part of counsel, the judgment must be reversed."

Under the above authorities and the decisions therein cited, there can be no question that this question was improper. The only question is, Was the error harmless in view of the fact that the court sustained an objection

to the question and directed the jury not to consider the same? In the case of People v. Wells, 100 Cal. 459, 34 P. 1078, 1079, the court had under consideration this identical question, and there said:

"This was an entirely unfair way to try the case; and the mischief was not averted because the court properly sustained the objection,—though we think it should have warned counsel against the course which he was taking,— and instructed the jury specially on the subject. The wrong and the harm was in the asking of the question. Of course, in trials of criminal cases, questions as to the admissibility of evidence will frequently arise about which lawyers and judges may fairly differ in opinion; and in such cases defendants must be satisfied when courts sustain their objections. But where the prosecuting attorney asks a defendant questions which he knows, and every judge and lawyer knows, to be wholly inadmissible and wrong, and where the questions are asked without the expectation of answers, and where the clear purpose is to prejudice the jury against the defendant in a vital matter by the mere asking of the questions, then a judgment against the defendant will be reversed, although objections to the questions were sustained, unless it appears that the questions could not have influenced the verdict."

In the cases above cited this question has arisen in most cases, where the court has permitted the withdrawal of the plea of guilty after it was entered in the trial court. We have examined a number of cases which have held that evidence was admissible where the plea was entered in a justice or preliminary court, on the grounds that the plea was a confession. Other cases have held otherwise. This argument does not appeal to us. Taking into consideration the fact that our statute here involved has designated a violation thereof as a felony, St. 1931, § 10324, 47 Okla. St. Ann. § 93, many of the citizens of this state, at the time of their arrest thereunder, and even at the time of their arraignment, are not aware of the fact that they are being

charged with a felony and the consequences that may arise therefrom. They often do not procure counsel to advise them of their rights, but enter a plea of guilty upon the assumption that this is the easier way to get rid of their arrest without publicity. When they become informed of the seriousness of the charge, they often request a change of their plea of guilty to a plea of not guilty, requiring the state to give them a trial upon the merits of the case as they have a right to do. It seems to us that under these facts and circumstances, to permit to be introduced in evidence a plea of guilty at the preliminary examination would not only be prejudicial, but would be unreasonable. And as stated in the Wells Case, supra, "The wrong and the harm was in the asking of the question." When applied to all the facts in the case at bar, and from the verdict rendered by the jury, there cannot be much doubt that the asking of this question had its effect upon the jury. And while not deciding that in every case where a question to which an objection is sustained by the trial court and the jury is instructed not to consider the same in its deliberations, is cause for reversing the case, yet, under all the facts and circumstances in this case, we have come to the conclusion that a reversal would be in the interest of justice, rather than a modification of this judgment.

In the brief filed by the state it is stated: "We admit that under the decisions of this court it was improper for the county attorney to ask such question", but contends that the evidence conclusively established the guilt of defendant and that he, therefore, suffered no injury by the asking of the question. It is contended that the entire record should be examined to see if any material injury to the defendant appears, "and unless such injury appears, the error will not be grounds for reversal". This is ex-

actly what we have done, and come to the conclusion that it is best that the judgment and sentence be reversed.

We might further state that it is our judgment that it would probably have been better had the officers approached this defendant when they first saw him parked in his automobile in front of the Jones Drug Store on Highway No. 81, and at that time ascertained if the information they had obtained from the police officer was true. The chief of police, who was standing just across the street, could and should have accompanied them, and if they came to the conclusion that defendant was intoxicated to that extent, as they testified, he could have been charged with the crime of drunkenness in a public place, and could have been punished to the extent that justice would have been done. This, to our mind, would have been the better procedure, than to wait until he started his car and followed him and then charged him with the commission of a felony. He could have then been charged by the regularly constituted and elected officers of Kingfisher county, who are elected and must answer to the people of that city and county. However, these officers are to be commended in their effort to enforce the law without fear or favor. This was soon after their appointment, and they were no doubt doing their duty as they saw fit.

Having come to the conclusions as above stated it is unnecessary to pass upon the question presented by counsel to the violation of defendant's constitutional right as to whether or not he was unlawfully arrested. By a reversal of this case justice can be administered as the facts justify.

We have examined the conduct of the trial of this case, and the instructions of the trial court, and will state that these instructions were in proper form and protected the rights of the defendant in every way. The term "under

the infuence of intoxicating liquor" was properly defined and defendant was given every right under the law to which he was entitled.

The judgment of the district court of Kingfisher county is reversed.

DOYLE, P. J., and JONES, J., concur.