Brian CAMBRIDGE, Appellant,

v.

STATE of Indiana, Appellee.

No. 1180S414.

Supreme Court of Indiana.

Dec. 17, 1981.

Rehearing Denied Feb. 23, 1982.

R. Davy Eaglesfield, III, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Brian Cambridge, was convicted in a trial by jury of the offense of attempted murder, Ind. Code § 35–42–1–1, and Ind.Code § 35–41–5–1(a), arising out of the shooting of Robin Jackson, the woman with whom he was living. He received a sentence of thirty years' imprisonment. The following issues have been raised:

(1) Whether the trial court erroneously denied a mistrial motion when Robin Jackson testified that appellant had signed a guilty plea.

(2) Whether the trial court erroneously refused to give defendant's Instruction No. 2 which would have permitted a guilty verdict of attempted involuntary manslaughter.

(3) Whether the trial court erroneously refused to give defendant's Instruction No. 1 which would have permitted a guilty verdict of attempted manslaughter.

(4) Whether an exhibit consisting of a letter written by appellant was inadmissible because irrelevant and prejudicial.

The evidence presented at trial tending to support the verdict of guilty, showed that appellant and his friend, Robin Jackson, moved from New York to an apartment in Indianapolis. On June 16, 1979, following several arguments earlier in the day, at 5:40 a. m., appellant entered the apartment with his key, held Jackson down on a bed, said that he was going to kill her, put a gun to her forehead, and fired it. The bullet went into the forehead, travelled about one inch and exited at the hairline. She did not lose consciousness and was able to call for help by telephone. She survived and was conscious when found outside the apartment by the police. She was bleeding profusely from the head wound. Appellant was present and was arrested. The gun and bullet were not recovered. She provided the evidence at trial upon which appellant was convicted.

## I.

Considerable evidence of communications between appellant and the victim, Robin Jackson, occurring while he was confined in jail awaiting trial, reached the jury. To undermine her credibility defense counsel probed the circumstances under which she visited appellant at the jail during this period, and her motivation in so doing. In the course of responding under critical cross-examination, the witness revealed that appellant had signed a guilty plea. The transcript at this point is as follows:

"Q. In other words you couldn't just walk up to the Jail and say, 'I want to visit Brian Cambridge', could you?

A. That's what I did.

Q. But, you weren't on his visiting list, were you?

A. No, but, Benny * * *.

Q. * * * you had to get special permission, didn't you?

A. Most out-of-town visitors do, yes.

Q. I'm asking you if you had any special permission?

A. Yes.

Q. And, you had to do that on your own, that wasn't something Brian Cambridge could have done for you, is it?

A. No, he couldn't do it for me, but as I was trying to say, the Court case was supposed to be over, Benny had signed a Guilty Plea; and that was the only time I went down there to find out about my diamond * * *.

*MR. HOLLANDER:* * * * Your Honor I would ask for the witness' statement to be struck, and ask for a mistrial; it was an answer unresponsive to the question, and elicited information not requested.

*COURT:* We'll grant the Motion to strike the witness' answer as not responsive to the question, and the Jury is instructed to disregard the last answer; Motion for Mistrial, overruled. You may proceed."

As can be seen, the court struck the answer and instructed the jury to disregard it, but overruled the motion for mistrial. The issue presented is whether the trial court erred in this latter ruling.

■ Evidence that the accused entered a plea of guilty and withdrew it prior to trial is inadmissible at trial on the charge. *Wright v. State,* (1977) 266 Ind. 327, 363 N.E.2d 1221. The fact that appellant made and withdrew his plea of guilty was inadmissible, and the striking of the answer was correct because of the policy of the law. Id.; Ind. Code § 35–5–6–3. The court admonished the jury to disregard the answer, and such admonition is presumed to cure any potential harm. In dealing with a similar situation in *Bailey v. State,* (1980) Ind., 412 N.E.2d 56, we stated:

"The trial court sustained the objection, admonished the jury to disregard the testimony, but denied the mistrial motion. Appellant contends that it was error to deny his motion for mistrial. Such a motion must be granted where the event at trial upon which it is predicated has placed the accused in a position of grave peril to which he should not have been exposed. *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843." 412 N.E.2d at 60.

Improper testimony that the accused at one time entered a plea of guilty to the charges for which he is on trial, like improper testimony that the accused confessed to the charges, will ordinarily make a prejudicial impression and have a persuasive effect upon the jury that no admonition could eradicate. *Staton v. State,* —— Ind. ——, 428 N.E.2d 1203 (1981). Introduction of such matter at trial would place the accused in a position of grave peril to which he should not have been subjected, requiring a mistrial to be granted. A mistrial will be the probable result when such egregious and persuasive evidence is presented by witnesses such as police officers, attorneys, and other specially trained public officials whose testimony may be given added weight. However here, the improper testimony came from Robin Jackson, a lay witness. It was not produced through efforts of the prosecution. She would be viewed by the jury as having no special or unique knowledge of

the criminal process. The persuasive effect of her pronouncement that appellant had pleaded guilty would not survive the judge's admonition.

## II.

■ Cambridge claims that the trial court erred in refusing his Tendered Final Instruction No. 2. That instruction was:

"The Defendant requests that the Court instruct the jury as follows:

That the law defines the lesser included offense of Involuntary Manslaughter as follows:

A person who kills another human being while committing or attempting to commit battery commits involuntary manslaughter, a Class C felony."

The court gave its own instruction from the general attempt statute. Appellant argues that he was entitled to have his Instruction No. 2 given in conjunction with the court's instruction from the general attempt statute and the court's instruction defining lesser and included offenses, thereby permitting the jury to reach a verdict of guilty of the lesser and included offense of attempted involuntary manslaughter.

In *Smith v. State*, (1981) Ind., 422 N.E.2d 1179, this Court held that Ind. Code § 35–41–5–1, the general attempt statute, "can have application only to specific intent crimes, and that there can be no crime of 'attempted involuntary manslaughter'." In view of this holding appellant's argument in support of his right to have his Instruction No. 2 given is not valid.

## III.

■ Cambridge claims that the trial court erred in refusing his Tendered Final Instruction No. 1. That instruction was:

"The Defendant requests that the Court instruct the jury as follows:

The law defines the lesser included offense of Voluntary Manslaughter as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony.

The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter."

For the purposes of deciding whether to give a proffered instruction defining an included offense, two conditions must be met. The offense must meet the definitional test of Ind. Code § 35–41–1–2, and there must be evidence produced at trial warranting submission of the instruction. *Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208; *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770. Here, the evidence showed that appellant and Robin Jackson moved into an apartment. She was paying the bills, but appellant was unable to get a job. She left and returned to New York. When she returned to the apartment a month later, their relationship had changed. Appellant did not keep regular hours at their apartment and repeatedly received telephone calls from a woman.

Finally on June 15, 1979, Jackson told appellant she was leaving. They argued over the division of money she had received from the sale of some furniture, over some cigarettes and over appellant's phone calls. She described these episodes as discussions and denied that they were heated. She said that she told him how she felt and he told her how he felt. Neither struck or attempted to strike the other. Both left the apartment that evening, went their separate ways and she returned to the apartment first. At about 3:00 a. m. on June 16, 1979, (the same night) appellant telephoned and said that he would return shortly. She waited for him, and when he did not show up she went to her aunt's house. In a short while she returned to the apartment and retired.

At 5:30 a. m. appellant returned. She first saw him as he stood beside her bed. He climbed on top of her, pinning her arms to the bed. He asked her two accusatory questions concerning some cigarettes in the apartment, and her whereabouts earlier that evening. She replied to the first that he would know if he stayed home more, and to the second that she had been to her

aunt's. Appellant slapped her, said she was lying, and said that he was going to kill her. He took gun in hand with a look in his eyes variously described by her as "unfamiliar", "raged hate", "just looked cold", "just glaring, just hard", as though he was "high"; placed the gun to her head, and as she said his name and turned to look out the window, he fired.

The evidence at trial supports the fact beyond question that appellant, at the time of the shooting, had the state of mind required by the murder statute. It does not however present a basis upon which a reasonable trier of fact could infer that appellant acted in the heat of passion brought on by sufficient provocation. Appellant claims on appeal that his accusatory questions to her at the time of the shooting show that he was in a fit of jealousy. There must be evidence of a provocation sufficient to excite the mind to the point where reason is obscured. *Hardin v. State*, (1980) Ind., 404 N.E.2d 1354. Here repeated telephone calls from a woman were being received at the apartment by appellant. It was he who was staying away from the apartment, and it was he who did not meet and greet her upon her announced return from New York. Their arguments regarding these matters came earlier in the day. A significant lapse of · time occurred between them and his return to the apartment. The presence of cigarettes in the apartment on his return and the fact that she had left the apartment earlier in the evening, cannot reasonably be viewed as provocation for a resentment barring reason. Moreover, the accusatory questions were put to Jackson after appellant commenced his physical attack by pinning her to the bed, and thus the attack was not in its inception the result of their verbal exchange at the time. The trial court did not err in refusing appellant's tendered instruction regarding involuntary manslaughter, as there was no evidence warranting it.

## IV.

■ The trial court permitted the prosecution to introduce a letter written by appellant to Robin Jackson on November 30, 1978, six and one-half months prior to the date of the charged offense. In it appellant wrote that he had purchased a gun to protect himself against some people who were trying to kill him, and relating that he had to have four stitches in his head and was not going to let anyone hurt him. He also wrote that he had to make a very important run up state. Appellant claims the letter was not relevant. The issue is preserved for review.

In *Pirtle v. State*, (1975) 263 Ind. 16, 323 N.E.2d 634, quoting from authority on the subject, we said:

" '[T]he most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence*?' McCormick, Evidence, § 185 at 437. In Indiana, 'evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight.' *Thomas v. State*, (1968) 251 Ind. 76, 80, 238 N.E.2d 20." (Original emphasis.) 263 Ind. at 34, 323 N.E.2d 634.

The prosecution had the burden in proving its charge that appellant possessed a gun at the scene and at the time of the shooting. The letter by its disclosures tends to support the fact that appellant procured a gun prior to the shooting for purposes of self-defense. He had a well-grounded fear at the time for his very life. This fear was the result of a threat posed by more than one person. The trier of fact could reasonably have inferred, furthermore, that his need for the feeling of security produced by possession of a gun, first experienced under such extreme circumstances would continue for six and one-half months. This letter rendered the inference that appellant possessed a gun at the scene and at the time of the shooting more probable than it would have been without it. Therefore the trial court did not err in admitting State's Exhibit No. 10.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.