732 P.2d 689

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Larry SIMONSON, Defendant-Appellant.**

**No. 16221.**

Court of Appeals of Idaho.

Jan. 26, 1987.

Petition for Review Denied April 7, 1987.

David W. Cantrill and Frank Kotyk (argued), Cantrill, Skinner, Sullivan & King, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A jury found Larry Simonson guilty of injuring a child, a felony under I.C. § 18-1505(1).[1] On appeal, he raises three issues for our review. First, he contends he was deprived of a fair trial when the mother of the victim—during cross-examination in the presence of the jury—disclosed that Simonson previously had pled guilty. Second, he asserts the trial court erred in allowing the state to present evidence that the child had suffered injuries on occasions other than the particular incident with which Simonson was charged. Finally, Simonson requests that we alter the record on appeal by excising the affidavit and order of probable cause for his arrest. For reasons explained below, we vacate the judgment of conviction because of the disclosure to the jury of Simonson's guilty plea. We remand the case for a new trial.

Larry Simonson was charged with felony injury to a 2½ year-old child. The prosecuting attorney's information alleged that on October 5, 1983, Simonson caused "a subdural hematoma to be formed in the brain of said child...." Following his arrest, Simonson pled not guilty and the case was scheduled for trial. Shortly before the trial date, Simonson changed his plea to guilty and the trial was vacated. Simonson later moved to withdraw his guilty plea. The motion was granted, a plea of not guilty was reentered and the case was rescheduled for trial.

When the trial commenced, but before any evidence was presented to the jury, Simonson moved for an order *in limine* to exclude evidence of any injuries suffered by the child other than the subdural hematoma on October 5, 1983, as stated in the prosecutor's information. The court denied Simonson's motion and a continuing objection by Simonson to such evidence was noted for the record.

The child-victim and his mother were living with Simonson at the time of the alleged offense. The mother testified concerning apparent injuries to the child which had occurred while the child was in the care and custody of Simonson, both on October 5, 1983 and on other previous occasions. The mother also made reference to Simonson's guilty plea. Because we hold this latter point resulted in a reversible error and is therefore dispositive of the appeal, we shall discuss it first.

I

The mother's reference to Simonson's guilty plea came about as follows. The mother was the first witness called by the state. She testified that she became acquainted with Simonson in early 1983 when he began working for the same business

---

**1.** Idaho Code § 18–1501(1) provides:

Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

where she was employed. She testified that they commenced living together in June of that year. In September Simonson was laid off, and they agreed that he would remain at home looking after her five children (including the victim) while she continued working. She testified that between September 6 and October 5, 1983, she noticed scratches, bruises, scalp wounds and other injuries to the victim on several occasions. She related the explanations given to her by Simonson for these contusions and lacerations, including a statement that he may have spanked the boy "too hard" on one occasion.

She described the events of October 5, 1983. She stated she had called her home in the early afternoon, around 2:00 p.m. Simonson answered the telephone. He told her the victim had fallen into the bathtub and had inhaled water into his lungs, but that the boy was alright. About 3:30, one of the other children called her and told her to come home because "something was wrong with [the victim]." When she arrived at the house, she found the boy slumped on the couch, incoherent and unable to make eye contact. After calling a doctor, she took the boy to the regional medical center for emergency treatment.[2]

On cross-examination, the victim's mother recounted the events she had related on direct examination. Simonson's counsel then pursued a line of inquiry showing that she had continued to have contact, and to have maintained her relationship, with Simonson after the incident on October 5, 1983. The following then occurred:

[DEFENSE COUNSEL]: And you have had the kids with him since then?

[WITNESS]: The kids live with me. When Larry comes over, the children are there.

[DEFENSE COUNSEL]: You have gone places, I think you said, didn't you?

[WITNESS]: Initially we did, before he pleaded guilty we went places. After he pleaded guilty and changed his plea—

At that point, Simonson's counsel interrupted and informed the court he wanted to make a motion. The court excused the jury and, after the jury left the courtroom, Simonson's counsel moved for a mistrial. Following a recess, the court denied the motion, but did give the jury a cautionary instruction.[3]

After presentation of additional evidence from other witnesses, the jury found Simonson guilty as charged. Simonson then filed a motion for a new trial, asserting he was prejudiced by the mother's reference to his guilty plea. The trial judge denied the motion, ruling:

[H]aving heard the entire testimony after the motion for mistrial, particularly the testimony of the defendant and his explanations of what occurred, I have no reason to believe that a jury would have reached any other decision than they did reach regardless of any tainted testimony that got before the jury. And for this reason, I am going to deny your motion for a new trial.

On appeal Simonson argues that the court erred in refusing to grant either the motion for a mistrial or the motion for a new trial, predicated on the reference to his guilty plea. Simonson's challenge to the admission of this evidence requires analysis of several related questions. First, did error occur at all? Second, if so, was the

---

**2.** Medical evidence presented later during the trial indicated that the boy had a "subdural hematoma" or bleeding between two of the layers of membrane which cover the brain. One of the doctors who examined the boy diagnosed this condition as possibly resulting from the child being physically shaken. The doctors also discovered that the child had recently suffered a broken collar-bone. Following October 5, 1983, the boy remained hospitalized for several weeks, undergoing treatment.

**3.** The court stated to the jury:

Ladies and gentlemen of the jury, immediately before the recess that we took, a statement came before you from the witness stand indicating that there had been previous legal proceedings in this matter, and I now admonish you to disregard any statement by the witness referring to any prior proceedings. You are further admonished that any reference to prior proceedings shall not be discussed by you or considered by you in your deliberations.

error cured by the court's cautionary instruction? Third, if error occurred which was not cured by the instruction, was the error harmless or should the court have granted either Simonson's motion for a mistrial or his motion for a new trial?

█ In *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), the United States Supreme Court held it was error for a federal trial court to allow the government, in a criminal prosecution, to present evidence of an earlier plea of guilty to the charge, which plea had been withdrawn by leave of the trial court. This rule has since been followed by most state courts. Annotation, *Propriety and Prejudicial Effect of Showing, in Criminal Case, Withdrawn Guilty Plea,* 86 A.L.R.2d 326 (1962).[4] *See also,* E. CLEARY, McCORMICK ON EVIDENCE § 159, at 423–24 (3d ed.1984); 29 AM.JUR.2D *Evidence* § 528 (1967); 24B C.J.S. *Criminal Law* § 1915(2), at 58 n. 99 (1962).

The *Kercheval* rule was recently accepted by the Idaho Supreme Court through adoption of Idaho Rule of Evidence 410. That rule recites in part:

> Except as otherwise provided in this rule,[5] evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn; ...[6]

Here, in all fairness to the state, we recognize that the reference to Simonson's guilty plea was not adduced by the prosecution as part of its case in chief to prove Simonson's guilt. Neither was it a likely response to any inquiry put to the witness by defense counsel, and thus did not amount to invited error. Rather, the statement was simply volunteered by the witness in explaining certain events that, apparently to her, were related in time. However, in light of the great weight of authority concluding that such evidence is inadmissible, 86 A.L.R.2d 326, *supra,* we hold that error occurred. Our decision is supported in particular by cases where such evidence—received as volunteered, non-responsive statements from a witness during trial—has been held to constitute error.

In *State v. Jensen,* 74 Utah 299, 279 P. 506 (1929), the defendant pled guilty to larceny, was then allowed to withdraw his plea, and subsequently went to trial. After the defendant had testified as to a conversation with an alleged accomplice which had taken place in the presence of the local sheriff, the sheriff was called by the state as a rebuttal witness. The sheriff gave his version of the conversation, and added—referring to the defendant—"That was in my office, the same day that he pleaded guilty in this case." Defense counsel immediately

---

4. The Annotation notes:

> A variety of reasons have been given for excluding evidence of withdrawn guilty pleas. Underlying all points of view seems to be the concept of "fairness," that it is simply unfair to use the plea against an accused after he has been allowed to retract it. It has been said that the judicial action permitting withdrawal of the plea adjudicates its inadmissibility as evidence against the accused in the subsequent trial under the substituted plea of not guilty. The view has also been taken that the evidentiary use of a withdrawn plea denies the defendant the benefit of the presumption of innocence. In somewhat similar vein, it has been said that the privilege of withdrawal is illusory if evidence of the plea is allowed, since juries almost invariably convict in such cases, thus making fiction of the rule that such evidence is not "conclusive," and making .the plea in fact irrevocable, and the trial simply an opportunity for the defendant to prove his innocence. [Footnote omitted.]
>
> 86 A.L.R.2d at 331–32.

5. The exceptions, which are inapplicable to Simonson's situation, relate to the use of a withdrawn plea for impeachment purposes, for prosecution for perjury or false statement made under oath, or where another statement made in the course of the same plea or plea discussions has been introduced "and the statement ought in fairness be considered contemporaneously with it."

6. Rule 410 was adopted effective July 1, 1985, about two weeks after Simonson's trial was concluded. We do not hold that the rule, *per se,* was applicable during Simonson's trial, but we are persuaded that the rule accurately reflects a general principle then existing in American jurisprudence.

objected and moved to strike the answer. The trial court refused to do so. On appeal the Utah Supreme Court reversed, applying the principle expressed in *Kercheval v. United States, supra.* The court held:

> We also are of the opinion that the admission of such objectionable testimony was prejudicial. The natural tendency of it was to do harm. From such kind of error prejudice will be presumed, until by the record it is affirmatively shown the error was not or could not have been of harmful effect. *Jensen v. Utah Ry. Co.* (Utah) [72 Utah 366] 270 P. 349. From the record it cannot be told that the objectionable testimony did not influence the jury in the rendition of the verdict. Upon such evidence it might be argued, and the jury induced to believe, that the defendant knew better than any one else whether or not he was guilty, and, as stated in *Kercheval v. U.S., supra,* the introduction of such evidence "may have turned the scale against" the defendant. The introduction of such kind of evidence was in the *Kercheval* Case held to be prejudicial, and upon that ground alone the judgment of the court below was reversed. Such, too, was the holding in other cases where the admissibility of such evidence was held error.

279 P. at 508.

In *People v. Haycraft*, 76 Ill.App.2d 149, 221 N.E.2d 317 (1966), after being allowed to withdraw an earlier plea of guilty, the defendant was tried for robbery. On cross-examination, the defendant was asked for the particulars of a conversation he had had with a probation officer. An objection to that question was sustained. The state later called the probation officer as a rebuttal witness. The witness disclosed that he had interrogated the defendant for the purpose of preparing a probation report. In the course of his narrative answer, the witness stated "I asked him if he performed the [robbery] and since he had already plead guilty at that time, he —." The answer was interrupted at that point by defense counsel's objection. The objection was sustained, the trial court proceeded to strike all of the witness' testimony

and admonished the jury to disregard it in its entirety. The defendant later moved for a mistrial, which was denied, and he appealed.

The Illinois Appellate Court reversed. In its decision, the court discussed the devastating effect of disclosure of a prior guilty plea to a jury. In concluding that *any* evidence of a withdrawn guilty plea must be excluded, the court stated:

> It is utterly inconsistent to permit a defendant to withdraw his guilty plea and then allow it, even inferentially, to be used against him. Once an accused has been permitted to withdraw his plea of guilty, he is entitled to all the privileges and presumptions that the law affords, including the presumption of innocence. [Citations omitted.]

> It is also difficult to conceive a disclosure more apt to influence a jury than the information that the accused had at one time pled guilty to the commission of the crime with which he stands charged. The average juror, almost by definition, is unable to grasp the subtle technicalities of the law. Ordinarily, he would be unable to contemplate that a man would admit guilt to a crime if in fact he were not guilty. Furthermore, he would be unable to erase that disclosure totally from his mind regardless of an admonishment from the court, however prompt and however strong. The human mind is not a blackboard from which unwanted information can be erased at will. We can think of nothing more damaging to an accused in the minds of the jury than the disclosure, however brief, that he had admitted guilt to the charge against him, and once that disclosure has been made we cannot say that he has received the fair and impartial trial to which he is entitled.

> Although [the witness'] statement was promptly stricken by the trial court and the jury directed to disregard his testimony completely, irreparable damage had already been done. The jury was aware, however indirectly, that the defendant, Haycraft, had previously pled guilty to

the crime of which he was accused. Under the circumstances, he did not receive a fair trial as guaranteed by the Constitution of the State of Illinois and the United States of America.

221 N.E.2d at 319.

In *People v. Bain*, 10 Ill.App.3d 909, 295 N.E.2d 295 (1973), two defendants were jointly charged with armed robbery. Initially, they pled guilty, but subsequently were allowed to withdraw those pleas and to have a jury trial. During the trial, defense counsel attempted to cast doubt on the identification of the defendants made by the complaining witness from a group of photographs presented to the witness by the police. The witness was asked "Did you ever identify them by their face[s]?" His answer was "Yes, when they stood, and pled guilty to the same deal here." The defense immediately objected and moved for a mistrial. The trial court denied the motion on the ground that the answer was made to a question propounded by defense counsel.

On appeal the Illinois court reversed. Relying on *People v. Haycraft*, 76 Ill. App.2d 149, 221 N.E.2d 317 (1966) and *Kercheval v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), the appellate court reasoned:

> [W]e too find it difficult to conceive a disclosure more apt to influence a jury; nor can we think of anything more damaging to an accused in the minds of the jury than to reveal, however briefly or inadvertently, that he at some previous time had admitted his guilt to the very crime for which he was being tried. It would be extremely difficult, if not impossible, for an average juror to contemplate that a man would ever have admitted guilt to a crime if in fact he were not guilty. Here the trial court expressly recognized the prejudicial effect that the revelation of the previous guilty pleas would have on the jury, but he endeavored to justify his ruling on the grounds that the statement of the witness was elicited by a question from defense counsel. We cannot agree. The question

was not asked purposely, to cause a mistrial. Rather it was an inadvertence on the part of the witness without fault attributable to anyone. The fact remains that the former guilty pleas were revealed to the jury and at that point, as stated in *Haycraft*, the damage was irreparable. To proceed further could only result in a denial of defendant's right to a fair trial.

295 N.E.2d at 296–97.

Our research discloses two other cases bearing on this issue, but reaching results contrary to *Jensen*, *Haycraft* and *Bain*. Those cases are *Cambridge v. State*, 428 N.E.2d 1252 (Ind.1981) and *United States v. Grunsfeld*, 558 F.2d 1231 (6th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977). In *Cambridge*, Brian (Benny) Cambridge was charged with the attempted murder of his girl friend. Endeavoring to undermine the credibility of the victim, defense counsel cross-examined her about the circumstances under which she visited "Benny" at the jail after his arrest. In explaining her reasons for visiting the defendant, the witness volunteered "the Court case was supposed to be over, Benny had signed a Guilty Plea."

On appeal, the Indiana Supreme Court recognized that evidence of a withdrawn guilty plea is inadmissible at trial on the charge. However, the appellate court also concluded that an admonition by the trial court to disregard the answer was sufficient to cure any potential harm because the improper testimony came from a "lay witness" rather than from a police officer or public official and was not produced through efforts of the prosecution.

*Grunsfeld* involved multiple defendants charged with conspiracy to manufacture and distribute controlled substances. During trial a prosecution witness was cross-examined about comments made to him by Grunsfeld concerning the use of chemicals Grunsfeld had supplied to others. The witness was asked, that when the comments were made, whether he thought Grunsfeld was going to be a witness in this case and not a defendant. The witness replied, "He

was a defendant at that time. However, he had indicated to me that he was going to plead guilty."

On appeal, the Circuit Court acknowledged that the witness' statement, if believed by the jury, would indeed be damaging to Mr. Grunsfeld. However, the court declined to reverse Grunsfeld's conviction, holding that, in the context in which it occurred, the answer was fairly responsive to defense counsel's question, was an isolated circumstance not elicited by the prosecutor, and was promptly followed by a cautionary statement from the trial court.

From our comparison of these cases, we are persuaded that the better reasoning has been expressed in *Jensen, Haycraft* and *Bain.* We therefore conclude error occurred when the mother of the victim testified that Simonson had previously pled guilty.

■ Furthermore, as noted in *Haycraft,* we do not believe the cautionary instruction given by the court in this case could have removed the effect of the prejudicial evidence from the minds of the jurors. The Annotation, cited *supra,* states:

> In jurisdictions where evidence of a withdrawn guilty plea has been expressly held to be inadmissible it has usually been held that the error cannot be cured by judicial admonitions or instructions to the jury to disregard their knowledge of the fact.

86 A.L.R.2d at 338. Typical of this view is the case of *State v. Boone,* 66 N.J. 38, 327 A.2d 661 (1974). There the court held:

> Nor is it any answer to argue that the trial courts can insure that evidence of a withdrawn plea is not misused by the jury by issuing cautionary instructions. There are undoubtedly situations in which notwithstanding the most exemplary charge, a juror will find it impossible to disregard such a prejudicial statement. We hold that this is one such situation. In this respect it is well to recall the oft quoted observations of Justice Jackson concurring in *Krulewitch v. United States,* 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed.2d 790, 799, (1949),

> "The naive assumption that prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction." (Citations omitted.)

327 A.2d at 667. We agree and hold that the court's instruction did not remedy the erroneous admission of the evidence.

■ Finally, we consider whether the error was harmless or requires reversal of Simonson's conviction. The state submits that, if admission of the evidence constituted error, a harmless-error analysis should be employed. Under that analysis, the question a reviewing court must ask is: absent the error relied on, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty? *United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), *applying Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also State v. LePage,* 102 Idaho 387, 630 P.2d 674, *cert. denied,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); *State v. Palin,* 106 Idaho 70, 675 P.2d 49 (Ct.App. 1983); *State v. Urquhart,* 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983). Several courts have applied the *Chapman* harmless-error approach to the admission of evidence of a withdrawn plea, and have concluded the convictions appealed from should be affirmed. *See e.g., United States v. Tesack,* 538 F.2d 1068 (4th Cir.), *cert. denied* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976) (other evidence of guilt was both "massive and conclusive"); *United States v. Sopczak,* 742 F.2d 1119 (8th Cir.1984) (other evidence "overwhelming"); *United States v. Doamarel,* 567 F.Supp. 254 (D.Del.1983), *aff'd,* 729 F.2d 1449 (3d Cir.), *cert. denied,* 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 843 (1984) (other evidence "overwhelming"); *Thessen v. State,* 454 P.2d 341 (Alaska 1969), *cert. denied,* 391 U.S. 1029, 90 S.Ct. 588, 24 L.Ed.2d 525 (1970) (other evidence was "clear and convincing"). Other courts have not been so convinced and have reversed the convictions. *See e.g., Frantz v. State,* 70 Okl.Cr. 214, 105 P.2d 561 (1940) (reversal "in the

interest of justice" after examination of entire record); *State v. Thomson*, 203 Or. 1, 278 P.2d 142 (1954) (other evidence of guilt was conflicting); *State v. Jensen*, 74 Utah 299, 279 P. 506 (1929) ("from the record it cannot be told that the objectionable testimony did not influence the jury").

Here, the evidence at Simonson's trial was conflicting on the issue of guilt. The state's evidence was circumstantial. The mother described the situation of the victim on the day in question and medical evidence was presented diagnosing the victim's condition. Simonson testified concerning the events of that day and denied mistreating the child in any respect. Given this state of the evidence, we cannot conclude that it is clear beyond a reasonable doubt that the jury would have found Simonson guilty in the absence of learning that he previously had pled guilty. We are persuaded that the presentation of the inadmissible evidence may have contributed to the verdict. Thus we hold that Simonson's conviction must be reversed and the case remanded for a new trial. Having reached that conclusion, effectively reversing the trial court's denial of Simonson's motion for a new trial, we need not address the question of whether the trial court abused its discretion in denying Simonson's motion for mistrial.

## II

Simonson next asserts that the trial court erred in allowing the state to present evidence of several injuries received by the victim during a limited time period immediately preceding October 5, 1983. Inasmuch as we are ordering a new trial in this case it is unnecessary to determine at this time whether the admission of that evidence constituted error. However, because the same or similar evidence may be offered at a subsequent trial, we will discuss the admissibility of such evidence, for guidance on remand.

Idaho Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id. See also* E. CLEARY, McCORMICK ON EVIDENCE § 190 (3d. ed. 1984). The admissibility of such proof is subject to two tests. First, it must be shown that the proffered evidence is relevant to a material and disputed issue concerning the crime charged. *State v. Roach*, 109 Idaho 973, 712 P.2d 674 (Ct.App.1985). Second, and only if the evidence is deemed relevant, it must be determined whether the probative value of the evidence is outweighed by unfair prejudice to the defendant. *Id.* This balancing is left to the discretion of the trial judge and will not be disturbed unless that discretion has been abused.

Our Supreme Court has held that evidence of prior injuries to, and mistreatment of, a child may be admitted where it is relevant to a material issue. *See State v. Stuart*, 110 Idaho 163, 715 P.2d 833 (1986) *and State v. Sanchez*, 94 Idaho 125, 483 P.2d 173 (1971). These cases are consistent with opinions from other jurisdictions holding that such evidence is admissible to prove the injuries in question resulted from an intentional act rather than from an accident or by mistake. *People v. Christian*, 632 P.2d 1031 (Colo.1981); *State v. Tucker*, 181 Conn. 406, 435 A.2d 986 (1980); *People v. Drumheller*, 15 Ill.App.3d 418, 304 N.E.2d 455 (1973); *People v. Barnard*, 93 Mich.App. 590, 286 N.W.2d 870 (1979); *People v. Henson*, 33 N.Y.2d 63, 304 N.E.2d 358, 349 N.Y.S.2d 657 (1973); *Bludsworth v. State*, 98 Nev. 289, 646 P.2d 558 (1982); *State v. Tanner*, 675 P.2d 539 (Utah 1983). Also, it is not necessary that the defendant be connected directly with the infliction of prior injuries, if the evidence shows the injuries occurred while the child was in the sole care of the defendant. *United States v. Harris*, 661 F.2d 138 (10th Cir.1981); *People v. Hosier*, 186 Colo. 116, 525 P.2d 1161 (1974); *People v. Ellis*, 41 Colo.App.

271, 589 P.2d 494 (1979); *People v. Barnard, supra; People v. Henson, supra.*

In the event that proof of prior injuries to the child is presented at Simonson's new trial, these principles should guide the trial court in determining whether such evidence is relevant. If the court decides the offered evidence is relevant, then the court must apply the balancing process to determine whether the evidence will be admitted.

### III

Finally, Simonson objects to the inclusion in the record on appeal of the affidavit of probable cause and the order finding probable cause to issue a warrant for his arrest on the charge in this case. After the record was prepared following Simonson's notice of appeal, Simonson moved for an order from the district court to excise those documents from the appellate record. The district judge denied Simonson's motion.

On appeal, Simonson argues that the district judge's ruling was an abuse of discretion. In response, the state points to Idaho Appellate Rule 30 which sets forth the procedure to be followed for deletion of documents from the clerk's record on appeal. Under that rule, deletions result only by order of the appellate court upon granting a motion after notice to other parties to the appeal, or upon approving a stipulation therefor. In reply, Simonson asserts that his continuing objection to inclusion of the affidavit and order essentially constitutes a motion to delete those materials. We do not agree that Simonson's issue can be so treated. Rule 30 clearly sets forth the method and manner for deletion of documents from the appellate record following proper motion or stipulation. Simonson did not follow that procedure. We are not sure what prejudice, if any, Simonson perceives in allowing the subject documents to be part of the appellate record. In any event, we decline on procedural grounds to grant Simonson the relief he seeks on this issue.

The judgment of conviction is vacated. Case remanded for new trial.

BURNETT and SWANSTROM, JJ., concur.