736 P.2d 1371

STATE of Idaho, Plaintiff-Respondent,

v.

Michael WINKLER,
Defendant-Appellant.

No. 16065.

Court of Appeals of Idaho.

April 30, 1987.

Michael J. Wood, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael A. Henderson, Peter Charles Erbland (argued), Deputy Attys. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

One afternoon in Twin Falls, Michael Winkler made the acquaintance of a fourteen-year old female. This young woman contends Winkler lured her from a party at a house to a van parked nearby and, by threatening harm, induced her to have sex-

ual intercourse with him. Winkler denies accompanying her to the van and denies any sexual assault. A jury found Winkler guilty of rape.[1] The trial judge entered judgment and committed Winkler to the custody of the State Board of Correction for an indeterminate period not to exceed life.

On appeal, Winkler presents four issues: (1) Did the trial court err by admitting an exhibit consisting of three newspaper clippings, which reported other charges pending against Winkler? (2) Did the court err by limiting cross-examination of the alleged victim regarding her prior sexual activity? (3) Did the court err in admitting evidence of previous felony convictions to impeach Winkler's testimony? (4) Did reversible error occur when the prosecutor vouched for the credibility of the complaining witness, during his summation? We hold the court committed reversible error by admitting the newspaper clippings which reported pending charges. We vacate the judgment of conviction and remand this case for a new trial. We will address all the issues raised by Winkler, for guidance at a new trial.

The following undisputed facts are gleaned from the record. Winkler met the alleged victim when she entered a van in which he was riding. They and their companions in the van proceeded by a circuitous route to the home of the van owner's brother, with the intention of "partying." Sometime later the victim left the home on foot in a state of emotional distress. When a neighbor offered aid, the victim disclosed that she had been raped, requested use of a phone and, later, accepted a ride to the apartment where she lived. This samaritan reported the victim's allegations to the police and an investigation ensued. Winkler was charged with rape on the basis of the victim's age, and on the basis of her statement that she had been prevented from resisting sexual intercourse by threats of bodily harm.

However, the events at the party are substantially disputed. The victim's testimony set forth the following scenario. While walking to her grandmother's home from the apartment where she was staying, she approached the van in question. A friend in the van invited her to party with them. She accepted and entered the van. There she met Winkler, who was one of the five occupants of the van. They drove to the residence of an acquaintance, where alcohol and marijuana were shared. However, she contends her consumption of intoxicants was minimal.

The victim testified that, while in the house, she was treated rudely by the others present and, therefore, agreed to accompany Winkler outside. She contends Winkler lured her into the van and sexually assaulted her. She testified Winkler threatened to throw her off a bridge or into a nearby canyon if she didn't comply with his wish for sexual intercourse. She also described a display of certain newspaper articles from his wallet, accompanied by suggestions that he had previously committed violent acts on other persons. According to the victim, sexual intercourse followed. She then returned to the residence, where she was insulted and slapped by one of the female guests. Crying, she left the scene.

---

1. Winkler was charged under I.C. § 18–6101(1) and (4), defining rape as:

> [A]n act of sexual intercourse accomplished with a female under either of the following circumstances:
>
> 1. Where the female is under the age of eighteen (18) years.
>
> ....
>
> 4. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution; or by any intoxicating narcotic, or anaesthetic substance administered by or with the privity of the accused.
>
> ....

The jury returned a general verdict of guilty of rape, without specifying whether the crime was statutory rape because of the victim's age, or rape under threat of harm regardless of the victim's age. See State v. LaMere, 103 Idaho 839, 655 P.2d 46 (1982).

> [W]e agree ... that "the subdivisions ... do not state different offenses but merely define the different circumstances under which an act of intercourse constitutes the crime of rape."

103 Idaho at 842 n. 1, 655 P.2d at 49, n. 1, (quoting People v. Collins, 54 Cal.2d 57, 4 Cal. Rptr. 158, 160, 351 P.2d 326, 328 (1960)).

Winkler took the stand on his own behalf and disputed the victim's version of the evening. He testified that the girl invited him outside and that they proceeded only as far as a nearby gate, where she requested a place to stay or a ride somewhere. He denied any sexual assault. He contended she had earlier provided money to him with which to purchase drugs and that she became angry when he refused to return the funds. It was implied that this refusal may have been the motivation for her accusations.

The state presented corroborating evidence to support the girl's testimony. This evidence included personal articles belonging to the victim (a comb and a sock) which were found in the van, newspaper clippings contained in Winkler's wallet when he was arrested shortly after the alleged rape, and the results of analyses of body fluid, hair and clothing samples. The state presented testimony from a series of investigators who confirmed that semen had been found in the victim's vagina. One of the investigators testified that, because the blood-type of the victim in this case would "mask" that of the defendant, Winkler, the blood-type analysis did not eliminate the possibility, nor conclusively prove, that Winkler was the source of this semen. Dried semen stains were also located on blankets obtained from the van and upon the clothing of both the victim and Winkler. Those stains apparently were not tested to determine blood-types. An investigator testified that a hair found on the defendant's underwear had the same characteristics as hair from the victim's head. As noted, the jury found Winkler guilty of rape.

I

We will first discuss the admission in evidence of the newspaper clippings. The clippings were admitted as a single exhibit, marked as "Exhibit AA." These newspaper clippings included reports of unrelated arrests and charges pending against Winkler. One article reported that Winkler had been arrested and charged with "aggravated battery with intent to commit murder." This item included witness descriptions of a fight involving Winkler, wherein he allegedly shot and wounded an apparently innocent person who had attempted to intervene in the fight. A second article described a misdemeanor charge of malicious destruction of property for smashing a windshield, and repeated the "aggravated assault" report. The third article reported a separate incident for which Winkler had been charged with aggravated battery. In that report, Winkler was accused of beating and cutting the face of an individual who had supplied the police with information leading to the arrest of two other individuals for selling cocaine. The articles disclosed that Winkler was held on bonds of $25,000 and $50,000. All of the alleged crimes were reported as having occurred in the Twin Falls area. On appeal, Winkler contends that introduction of the newspaper clippings was extremely prejudicial, erroneously admitted, and possibly led the jury to convict him on improper grounds.

Evidence of a defendant's unrelated criminal activity is generally inadmissible to show criminal propensity or guilt of the crime charged. *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979); *State v. Wrenn*, 99 Idaho 506, 584 P.2d 1231 (1978); *State v. Garney*, 45 Idaho 768, 265 P. 668 (1928); *State v. Larsen*, 42 Idaho 517, 246 P. 313 (1926); *see also* I.R.E. 404. This exclusion is based upon the theory that evidence of other crimes "induces the jury to believe the accused is more likely to have committed the crime on trial because he is a man of criminal character. It, therefore, takes the jury away from their primary consideration of [the] guilt or innocence of the particular crime on trial." *State v. Wrenn*, *supra*, 99 Idaho at 510, 584 P.2d at 1235.

Under certain circumstances, evidence of other crimes is admissible.

[T]his type of evidence can be admitted if relevant to prove: (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the com-

mission of the crime on trial, and (6) other similar issues.

*State v. Roach,* 109 Idaho 973, 974, 712 P.2d 674, 675 (Ct.App.1985); *see, e.g., State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984).

■ However, even where the extrinsic offense evidence is relevant to a material issue at trial, the probative force of the evidence may be substantially outweighed by an inherent potential for prejudice. Thus, the decision to admit or exclude evidence of other crimes involves a two-tiered analysis. First, the evidence must be relevant to a material and disputed issue concerning the crime charged. Second, and only if the evidence is deemed relevant, it must be determined whether the probative value of the evidence is outweighed by the danger of unfair prejudice to the defendant. *State v. Simonson,* 112 Idaho 451, 732 P.2d 689 (Ct.App.1987); *see also United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (comparable federal court approach), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). This balancing is left to the discretion of the trial judge and will not be disturbed unless that discretion has been abused. *State v. Simonson, supra.*

With these principles in mind, we turn to the circumstances under which the newspaper clippings were admitted in this case, as Exhibit AA. Before trial, the state had requested a ruling from the court regarding the admissibility of the clippings. After a hearing, the court concluded:

The Court is going to reserve ruling on this point. I would definitely feel that if in fact the witness'—the alleged victim's credibility is placed at stake, this would be definitely permissible as a rebuttal evidence.

Whether or not they should be admitted in the case in chief would depend on my seeing the clippings and making a determination whether their prejudicial value would outweigh the probative val-

ue, since I would agree with [defendant's counsel] that the force and threats are not a necessary element of rape in this case where the victim is under age. On the other hand, if the identity of the defendant turns out to be an issue, they would definitely be admitted on rebuttal.

My present inclination would be that they probably would not be admissible in the case in chief, but would be on rebuttal in the event that the credibility of the witness became an issue.

However, I'm not going to rule on it at this time that they might be admissible at the case in chief depending on their content. The Court is going to want to see them and get the full context of their attempted mission.

At trial, the state called the victim as its first witness. On direct examination by the prosecutor, the victim asserted that Winkler had threatened to harm her if she did not cooperate. However, the witness did not mention the clippings. During cross-examination Winkler's counsel attempted to cast doubt upon the witness' version of the events. He emphasized her failure to request aid when, according to her testimony, several other men left the party, entered the van and drove about the city while the victim and Winkler were in the rear of the van.[2] Defense counsel inquired:

Isn't it true that you have made up all of this about what, any threats Mr. Winkler made to you? He didn't say anything about any threats; isn't that true?

To which she responded, "He threatened me."

On redirect examination the prosecutor attempted to rehabilitate the witness' testimony through the following exchange:

Q. When you were in the van, Mr. Winkler made some threats towards you?

A. Yeah.

. . . .

Q. Did Mr. Winkler make threats to you?

---

**2.** Neither the state nor the defendant called any of these men to testify regarding this particular

event.

A. Yes.

....

Q. Did Mr. Winkler show you anything?

A. Oh, yeah.

Q. What?

A. A newspaper clipping.

Q. Newspaper clipping regarding what?

A. That he shot somebody.

[Defense objection interposed; but overruled. Court instructs witness to repeat the answer.]

A. Yes, because he shot somebody before.

Q. The newspaper clippings were regarding this?

A. Yes.

Q. Where were those newspaper clippings located?

A. In his wallet.

Q. Did he take them out and show them to you?

A. Yes.

The witness then identified Exhibit AA as the clippings she had seen that evening.[3] As noted earlier, the witness' testimony on direct examination did not include mention of any threat involving a display of newspaper clippings. Over repeated objections, including "outside the scope" of direct examination, the court admitted this later testimony. The individual who aided the victim upon her exit from the party was also called as a witness. In addition to the other events, he testified that, upon his inquiry, the victim had mentioned being shown *a* newspaper clipping.

After laying the foundation that these clippings had been found in Winkler's wallet when he was searched later that evening, the state offered them as Exhibit AA. Winkler's objections on grounds of relevancy and materiality were overruled and the clippings were admitted as a single exhibit. Thus, these clippings were given to the jury for examination during their deliberation. I.R.C.P. 47(p).

The information contained in the clippings was obviously very suggestive of criminal tendencies. However, on appeal, the state argues the clippings were properly admitted to corroborate the victim's testimony that Winkler's threats had involved a display of newspaper clippings. Therefore, the state asserts that the clippings were relevant to establish that her resistance was overcome by threats accompanied by apparent power of execution. The state asserts that the testimony of the searching officer established the foundation necessary to admit the clippings, bearing on the question of Winkler's alleged threats.

For purposes of our analysis, we find it necessary to distinguish between the clippings as physical objects and the information conveyed by the writing contained therein. These clippings were creased pieces of paper having the texture of ordinary newsprint and bearing indications of having been torn and cut from larger paper. In combination with the officer's testimony, these attributes of the exhibit were probative of the defendant's possession of the clippings, as asserted by the victim. However, Winkler's pretrial argument that these clippings presented evidence of past offenses was clearly not directed to this aspect of the exhibit and it is the text of these clippings that presents a most troublesome question.

At the pretrial hearing, Winkler's counsel argued these clippings were unfairly prejudicial and included improper evidence of unrelated crimes. Obviously, it was this aspect of the clippings which also troubled the trial judge and led him initially to reserve ruling on their admissibility.

As noted above, the first step in determining whether such evidence should be admitted is an examination for relevancy. In determining whether the evidence is relevant, the courts must resort to logic, scientific knowledge, and common experience. Any legal evidence which logically tends to prove or to disprove a fact in issue is relevant and therefore admissible, provided it is not too remote or speculative or otherwise of such slight probative value as to justify the court in excluding it on the ground of immateriality.

---

**3.** It is unclear whether the witness identified this exhibit by reference to the physical characteristics of the clippings or to their written content.

G. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER, 106 (2d. ed. 1972). *See generally* E. CLEARY, McCORMICK ON EVIDENCE § 185 (3d ed. 1984) (hereinafter McCORMICK).

The victim testified that these clippings were displayed to her twice. She said they were first displayed in a nonthreatening manner to her and to other guests in the house. She testified that later, in the van, they were again displayed to her under circumstances she concluded were intended to convince her to submit to Winkler's demands.[4] The trial court overruled Winkler's relevancy objection and admitted the clippings as an exhibit.

Prior to identifying the clippings the victim's description of the text of these exhibits was limited to:

Q. [Prosecuting Attorney]: Did Mr. Winkler show you anything?

A. [Victim]: Oh, yeah.

Q. What?

A. A newspaper clipping.

Q. Newspaper clipping regarding what?

A. That he shot somebody.

[Defendant's "scope of direct" objection overruled.]

A. Yes, because he shot somebody before.

Q. The newspaper clippings were regarding this?

A. Yes.

She testified that they had been *shown* to her, not that she had *read* all or any portion of the clippings. However, the trial court found the clippings relevant and admissible.

In an early case discussing admission of "other crimes" evidence, our Supreme Court has stated:

[The] minds of the trial courts and of appellate courts may differ as to the reasonable, logical tendency of evidence to establish a given fact, and thus as to its relevancy, and that while there is no finality to the discretion of the trial court on the point of evidence, the appellate court should hesitate to superimpose its judgment to the contrary as to the probative value of the evidence, except as a matter of law, based upon established precedents.

*State v. Alvord*, 47 Idaho 162, 174, 272 P. 1010, 1013 (1928); *see also United States v. Robinson*, 560 F.2d 507 (2d Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978).

The state refers us to a series of Pennsylvania opinions in rape cases holding that evidence of verbal threats incorporating assertions of prior crimes and violent acts are admissible to prove the element of threat. *In Commonwealth v. Seigrist*, 253 Pa.Super. 411, 385 A.2d 405 (1978), during a sexual assault the defendant had informed his victim that he had been in jail on a number of occasions. The Superior Court noted that the victim "could have testified to what appellant told her, not to prove the truth of the assertion ..., but rather to prove the fact of the assertion which was clearly relevant to the question of lack of consent." *Id.* 385 A.2d at 410. Similarly, in *Commonwealth v. Kjersgaard*, 276 Pa. Super. 368, 419 A.2d 502 (1980), the victim testified that the defendant had informed her, while ordering her to undress, that he had murdered fifteen young women for refusing similar orders. The court described the defendant's argument that this testimony was an improper reference to other crimes as "the merest flummery." The court stated that the defendant's " 'admissions' were cogent evidence that his victims submitted only upon the threat of injury or death." *Id.* 419 A.2d at 506. Finally, in *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985), the victim testified that during the rape episode the defendant told her he previously had been in jail for rape. She related his description of that crime to the jury. The court held:

[W]hen there is evidence that a statement about prior criminal activity was made by the defendant in order to threaten and intimidate his victim, and when force or threat of harm is an element of

---

**4.** When Winkler subsequently testified in his own behalf, Winkler acknowledged he had displayed the clippings in the house. But he denied showing them to the victim in the van.

the crime for which the defendant is being tried, such evidence is admissible. *Id.* 495 A.2d at 179. Although we agree that a defendant who has incorporated statements about his past crimes into a criminal threat is not shielded from the use of such "other crimes" evidence, we hold that the cases cited by the state in this regard are inapposite to the instant matter.

Here, no testimony was elicited from the victim that she had read the clippings or was otherwise aware of their specific content. The state had elected to charge Winkler in the alternative with statutory rape, or forcible rape, or both. *See State v. LaMere*, cited *supra* at footnote 1. Therefore, a material issue in this case was whether the victim had been subjected to a threat accompanied by an apparent power of execution. The text of these clippings was only relevant to this issue to the extent the victim had personal knowledge of their content, or to support the state's contention that Winkler had so described their content.

■ It is unclear whether the victim actually read any portion of the clippings, or whether her entire knowledge at the time of the alleged sexual intercourse was limited to oral statements made by Winkler. In either case, on the basis of the record before us, we conclude that the text of Exhibit AA was of minimal probative value. It appears the information obtained by the jury may have greatly exceeded that conveyed to the victim. Aside from any information given to the victim during the incident and prior to the alleged sexual intercourse, the remainder of the text of these clippings was simply not relevant to a material issue.[5] Further, the corroborative value of the exhibits was limited, given the victim's testimony that these clippings had also been displayed in a nonthreatening circumstance in the house and, thus, she was otherwise aware the defendant possessed these clippings.

Having reached the conclusion that the written content of these documents was of minimal probative value at best, we must determine whether the value of this evidence was substantially outweighed by the danger of unfair prejudice.

In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

McCORMICK § 190, at 565.

■ We believe the conclusion is inescapable that any probative value of the evidence was substantially outweighed by its unfair prejudicial impact. This exhibit included reports charging the defendant with various violent acts. Statements regarding these acts were attributed to law enforcement personnel and to unnamed "witnesses." The accounts associated Winkler with other criminal suspects. The articles placed his activities within the same community from which the jury in the present case was drawn. In addition, the disclosure in the clippings of substantial bail requirements may have suggested to jurors that a judge had determined Winkler to be a danger to society. Therefore, absent evidence that the specific content of the reports contained in the clippings was known to the victim, and had been communicated to the victim in the form of a threat, we conclude that the danger of unfair prejudice so outweighed the probative value of the evidence that the *content* of the clippings should have been excluded.[6]

---

5. We note that the testimony was ambiguous whether one or more clippings were displayed in the van. The testimony of the victim mentioned only "*a* newspaper clipping" (emphasis added) in the threat context, while the prosecuting attorney repeatedly referred to clipping*s* and offered three as an exhibit. Any clippings not used to threaten the victim, of course, were not relevant to this element of the crime.

6. Our conclusion does not, and should not be interpreted to, prohibit admission of testimony by the victim regarding her personal knowledge of the existence of the clippings, or testimony by

The state has not argued that admission of the evidence was a harmless error. Although other physical evidence and expert testimony were presented, this case primarily hinged upon the credibility of the victim and of the defendant. The court's error admitted evidence reflecting harshly upon the character of the defendant.[7] Given the record before us we cannot declare a belief beyond a reasonable doubt that there was no reasonable possibility such evidence contributed to the conviction. *Compare State v. Baruth,* 107 Idaho 651, 691 P.2d 1266 (Ct.App.1984). We hold that the court committed reversible error by admitting Exhibit AA.[8]

We now turn to the other issues presented by Winkler.

## II

Winkler asserts that the court improperly limited his cross-examination of the victim with regard to her prior sexual activity. He contends this examination was an attempt to elicit proof of alternative sources of the state's physical evidence of recent sexual intercourse. Winkler argues that the state opened the door to this inquiry by asking the victim on direct examination:

Q. [A]t any other time during that day, either at [the party location, at your residence] or any other place, did you have intercourse with anybody else?

A. No.

Q. When had been the last time you had intercourse with anybody?

A. About a week before.

Q. The week before that?

A. Yeah.

On cross-examination Winkler's counsel asked her, "And really you were used to having sex through this period[?]" The prosecutor's objection to this question was sustained. Defense counsel then abandoned this line of questioning.

Winkler contends he should have been permitted to inquire into this area. He argues that the stated purpose of this inquiry was to rebut, by impeachment, the victim's statement that she had not had intercourse for one week prior to the party. He contends he sought only to create a doubt that he was the source of the semen. We are not persuaded.

■ Upon reviewing the record, we are convinced that this question was worded in such a way as to impugn the character of the witness. Idaho's rape-shield statute, I.C. § 18–6105, is intended to prevent such an attack.[9] *See State v. Palin,* 106 Idaho 70, 675 P.2d 49 (Ct.App.1983). Evidence of prior sexual conduct of the prosecuting wit-

---

the officer regarding their discovery in the defendant's possession.

7. Although, as we discuss in Part III, *infra,* evidence of Winkler's prior felony convictions was also admitted for impeachment purposes, the disclosure of those crimes was lacking in detail and was accompanied by a cautionary instruction limiting the consideration of that evidence to impeachment only. We presume the jurors obeyed that instruction and considered those convictions only for purposes of determining the credibility of Winkler's testimony.

8. If (as does not appear to be the case here) it could be established that the victim read or was informed of specific statements in the clippings, then perhaps those portions of the clippings could be admitted, with the remainder of the text excised or blocked from the documents. *See* 1 J. WEINSTEIN AND M. BERGER, WEINSTEIN'S EVIDENCE, ¶ 403[1], at 403–8 (1982). If the victim is unable to testify to any personal knowledge of the content of the text, it would be necessary to excise or block the full text before the clippings could be admitted for their physi-

cal characteristics. Even with this precaution, the court still would be required to weigh any unfair prejudice from the altered exhibits against their minimal probative value.

9. I.C. § 18–6105 provides:

In prosecutions for the crime of rape, evidence of the prosecuting witness' previous sexual conduct shall not be admitted nor reference made thereto in the presence of the jury, except as provided hereinafter. The defendant may make application to the court before or during the trial for the admission of evidence concerning the previous sexual conduct of the prosecuting witness. Upon such application the court shall conduct a hearing out of the presence of the jury as to the relevancy of such evidence of previous sexual conduct and shall limit the questioning and control the admission and exclusion of evidence upon trial. Nothing in this section shall limit the right of either the state or the accused to impeach credibility by the showing of prior felony convictions.

ness is admissible only if the court conducts a relevancy hearing out of the presence of the jury. *See* I.C. § 18–6105. Such a hearing was not requested or held in this case.

Had the purpose been as argued by Winkler, a much narrower line of questioning may have been open *after* a section 18–6105 hearing. Defense counsel was permitted to reveal an examining physician's report contradicting the victim's statement concerning intercourse "about a week before." According to the doctor's report, the victim had told him that the previous intercourse was "several weeks ago." Thus, Winkler was able to indicate that this fourteen-year old girl was sexually active. Should Winkler seek to present similar evidence on retrial, we express no opinion regarding any limitation which the trial judge should impose in exercising his discretion under I.C. § 18–6105.

### III

Winkler next contends that the trial court abused its discretion in permitting the state to submit evidence of the number and nature of Winkler's prior felony convictions. The evidence was presented for impeachment purposes and the jury was instructed accordingly. It appears from the record that the trial court complied with the then applicable provisions of I.R.C.P. 43(b)(6) in admitting the evidence and we do not find any abuse of discretion in that regard.

We note, however, that I.R.C.P. 43(b)(6) has since been rescinded and replaced by Idaho Rule of Evidence 609. Upon retrial of this case, the introduction of evidence of felony convictions, for impeachment purposes, will be governed by Rule 609.

### IV

Finally, Winkler refers us to a statement made by the prosecutor in closing argument, wherein the prosecutor stated:

Ladies and Gentlemen of the Jury, I told you Tuesday that the State would present a story. The story is going to either be true or false. We maintain the story of [the victim] is true. We maintain that, number one, *because I believe [her]*. You watched her on the witness stand. You make your judgment. [Emphasis added.]

The state admits that "I believe [her]" was improper vouching by the prosecutor, *see State v. Garcia*, 100 Idaho 108, 594 P.2d 146 (1979), but contends any error was harmless. *See generally United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (also discussing alternative trial court responses to vouching). Because this conviction is being vacated we need not decide the propriety of this specific comment. On retrial, we are confident the prosecuting attorney will act as an objective advocate and avoid vouching for the state's witnesses.

For the reasons set forth above, the judgment of conviction is vacated. Case remanded for new trial.

BURNETT and SWANSTROM, JJ., concur.