752 P.2d 632
**STATE of Idaho,**
**Plaintiff-Respondent-Cross**
**Appellant,**

v.

**Jerry Brent GUINN,**
**Defendant–Appellant–Cross**
**Respondent.**

**No. 16679.**

Court of Appeals of Idaho.

Feb. 9, 1988.

---

Randall D. Schulthies, Pocatello, for defendant-appellant-cross respondent.

Jim Jones, Atty. Gen., David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent-cross appellant.

WALTERS, Chief Judge.

Jerry Guinn of Pocatello was charged with "manufacturing a controlled substance" in violation of I.C. § 37–2732(a)(1)(B). Following a trial, the jury found Guinn guilty of the lesser offense of possessing more than three ounces of marijuana. *See* I.C. § 37–2732(e). The district court sentenced Guinn to an indeterminate term in the custody of the Board of Correction not to exceed four years. Guinn's appeal presents the following issues for our consideration. First, should

the district court have granted a mistrial when a witness volunteered that "Guinn is a convicted felon and has spent time in the penitentiary?" Second, did the district court err by not suppressing evidence obtained in a search of Guinn's residence? Third, was the state's disclosure of the identity of an informant-witness untimely and in contravention of Guinn's rights? Fourth, should the court have ordered this same witness to disclose the source of alleged threats made by Guinn concerning the witness? In addition, the state asks us to address the trial court's ruling admitting evidence of prior drug use by that witness. We hold that the court erred by not granting a mistrial when testimony regarding Guinn's criminal history was inadvertently placed before the jury. Accordingly, we set aside the judgment of conviction. We address the other issues to the extent they may relate to a new trial.

We briefly review the facts leading to this appeal. An informant, Robert Ashcroft, called the police to report marijuana being grown at a residence occupied by Guinn and an individual named Doug Cable. A state investigator obtained a warrant to search their home. This warrant was issued primarily on the strength of Ashcroft's report, as relayed to a magistrate by a police investigator. The search revealed marijuana and items commonly associated with the production and processing of marijuana. Apparently, Guinn and Cable were charged separately. Only the charge against Guinn is before us on appeal. Guinn pled not guilty to manufacturing marijuana. At the resulting trial, Guinn was found guilty of felonious possession of marijuana.

## I

Because the issue is dispositive, we turn first to Guinn's contention that a mistrial should have been declared when the informant, Ashcroft, testified regarding Guinn's criminal record. This testimony was presented as follows. On cross-examination, defense counsel attempted to impeach Ashcroft by eliciting his motive for initially contacting the police. Ashcroft began to explain, "The reason I called the 800 number was I had learned earlier from an acquaintance of mine, a friend of mine—." At this point counsel interrupted and attempted to ascertain the identity of the "acquaintance." However, the witness responded: "I don't wish to disclose his name, he's asked me not to in this, and he's quite afraid there will be some repercussions from Mr. Guinn and Cable and their peer group." In response to Guinn's motion to compel an answer, the trial judge declined to order disclosure. Defense counsel abruptly ceased his cross-examination of the witness.

The prosecuting attorney asked that the witness be permitted to finish his response to the inquiry. The court responded: "Well, you're on redirect. I guess he's asking you to answer it." The witness then set forth his reason, which involved alleged threats by Guinn and Cable conveyed to the witness by the "acquaintance." During the witness's explanation the trial judge interrupted to ascertain whether the witness would be testifying from personal knowledge or on the basis of hearsay. This exchange followed:

THE COURT: So long as it isn't hearsay, Mr. Riedner [the prosecuting attorney]. He can testify as to his own knowledge.

Can you do that, sir?

THE WITNESS: Yeah.

THE COURT: Not what [another person] might have told you, though.

THE WITNESS: I had reason to believe this would happen because Mr. Guinn is a convicted felon and has spent time in the penitentiary.

Guinn immediately objected and moved for a mistrial. The prosecuting attorney argued that the testimony was volunteered in response to Guinn's counsel's questioning and was more probative than prejudicial. The mistrial motion was denied. The court indicated that a special jury instruction would be prepared to address this testimony.[1]

1. Because the jury instructions in this case are not included in the appellate record, we are

On appeal from denial of a motion for mistrial, the question before us is whether the event which precipitated the motion for mistrial represents reversible error when viewed in the context of the full record. *State v. Urquhart*, 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983). Our focus is upon the incident's continuing impact on the trial. *Id.* The refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error. *Id.*

Evidence of a defendant's criminal past is generally inadmissible to prove the character of a person in order to show criminal propensity or guilt of the crime charged. I.R.E. 404(b); *see, e.g., State v. Winkler*, 112 Idaho 917, 736 P.2d 1371 (Ct.App.1987). However, such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. I.R.E. 404(b).

The state does not argue that this witness's statement falls within one of these exceptions. Instead the state asserts that the response was prompted by a question from Guinn's counsel, that the defendant later admitted felonies on cross-examination, and, under these circumstances, any error was harmless, not reversible, error. *See* I.C.R. 52.

We begin by examining the assertion that Guinn's counsel invited this testimony. It is true that Guinn's counsel sought to inquire regarding the witness's motivation for reporting Guinn's association with marijuana. However, when counsel was stymied in his quest to learn the source of the witness's fear of Guinn, he immediately discontinued his cross-examination. When the prosecuting attorney sought to have the question answered, the trial judge instructed the witness to consider the question to have been put to him by the prosecutor. The witness's attempts to respond were contested by Guinn's counsel, which led to the crucial exchange quoted above.

Based upon this record, we conclude that it was the court's attempt to clarify the foundation of the witness's testimony—*not* defense counsel's brief, aborted inquiry—that led to the witness's statement.

We are not persuaded that Guinn's later admission concerning his prior criminal record constituted a waiver of the earlier objection. By the time Guinn took the stand, the trial judge had denied the motion for a mistrial. Apparently Guinn sought to defuse the impact of his felony record by explaining that these crimes were committed immediately after his father's untimely death. And, unlike Ashcroft's statement, Guinn's "admission" did not mention his imprisonment. For these reasons, we conclude that the court erred by denying the mistrial motion. Therefore, we must determine whether the error was harmless.

In the face of overwhelming evidence that marijuana was being grown at his residence, Guinn pled not guilty to the charge of manufacturing marijuana. He contended that this activity was the sole responsibility and effort of Doug Cable, with whom Guinn shared the house. He admitted only to possessing less than three ounces of marijuana for personal use. Apparently Guinn's defense was partially successful; the jury convicted him only of possession instead of manufacturing. However, the jury did find him guilty of possession of more than three ounces, a felony.

As the trial court recognized, the defendant's previous imprisonment at the penitentiary should not have been made known to the jury, and the court apparently attempted to rectify the error by preparing a special instruction. The rule excluding evidence of prior, unrelated crimes is based upon a fear that a jury will convict the defendant solely upon a belief that the defendant is a person of criminal character. *State v. Abel*, 104 Idaho 865, 664 P.2d 772 (1983). Such a belief is not easily cured by an instruction. The testimony challenged

---

unable to determine whether such an instruction was given or to examine the language of

that instruction.

here was given in a context suggesting that the defendant's past conduct evoked fear in the witness. To hold that the error was harmless, we must declare a belief that beyond a reasonable doubt the jury's verdict would have been the same, absent the error. *State v. LePage*, 102 Idaho 387, 630 P.2d 674, *cert. denied*, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981).

Here, we are unable to say that Ashcroft's volunteered evidence did not contribute to the jury's determination of felonious possession of marijuana instead of the lesser crime of misdemeanor possession. The only direct evidence of Guinn's possession was his own admission of possessing less than three ounces. The other evidence was circumstantial, derived from the joint possession of the residence by Guinn and Cable. For the jury to have found Guinn guilty of possessing more than three ounces, the jury must have disbelieved Guinn's admission. The jury may have decided his testimony was not credible because of his prior felony record. If the evidence of Guinn's prior record had been excluded, we are not prepared to declare beyond a reasonable doubt that the jury would have arrived at the same verdict of felonious possession of marijuana, based on the remaining evidence. Therefore, we hold that the court committed reversible error by denying Guinn's mistrial motion. *Accord State v. Simonson*, 112 Idaho 451, 732 P.2d 689 (Ct.App.1987) (mistrial appropriate when witness volunteered prior guilty plea of defendant). Accordingly, we must remand for a new trial.

## II

Next we examine those issues which may arise again at a new trial. We begin with Guinn's contention that the court erred by admitting the evidence obtained as a result of the search of his residence. He contends this evidence should have been suppressed because the magistrate who issued the warrant lacked probable cause to believe evidence of criminal activity would be revealed by a search. The state asserts that the suppression motion was untimely and was properly denied.

The trial court first ruled that the motion in fact was untimely and denied leave to extend the time for filing the motion. But, believing that Guinn might still be able to raise the issue at trial by objecting to introduction of the evidence, the court also denied the motion on substantive grounds. *See* I.C.R. 12(f) *and State v. LePage, supra.* Because the judge could, within his discretion, permit a renewal of the motion before a new trial, *see* I.C.R. 12(f), we choose to examine only the substantive grounds for denial of the motion.

The search warrant in question was issued by a magistrate on the basis of an investigator's affidavit. Our task on review is to determine whether the magistrate had a substantial basis to conclude that probable cause existed. *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App. 1983). An affidavit supporting issuance of a warrant must be evaluated as a whole to determine whether it was sufficient to establish probable cause. *Id.* Such affidavits must be tested and interpreted by courts in a commonsense and realistic fashion. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Of course, probability, not a *prima facie* showing, of criminal activity is the standard for probable cause. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In making this determination, we apply the "totality of the circumstances" standard announced in *Illinois v. Gates, supra.* But, the credibility and basis of knowledge of the informant are still to be considered in an evaluation of probable cause. *State v. Fowler, supra.* When evaluating a warrant based in part on an undisclosed informant we do not ignore *Gates'* predecessor, the *Aguilar-Spinelli* standard. *See State v. Schaffer*, 107 Idaho 812, 693 P.2d 458 (Ct.App.1984).

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court announced a two-pronged test for determining whether hearsay information from an undisclosed informant could be used in establishing probable cause. This test, as supplemented in *Spinelli v. United States*, 393 U.S. 410,

89 S.Ct. 584, 21 L.Ed.2d 637 (1969), required the government to show the veracity of the informant and the basis of his knowledge. The government could demonstrate veracity either through the general credibility of the informant or through the reliability of the particular information provided. The basis of the informant's knowledge also could be demonstrated in two ways—directly, by a statement describing the underlying circumstances from which the informant obtained his information, or indirectly, by the inclusion of such detail that the information became self-verifying.

*Id.* at 817, 693 P.2d at 463.

 Here, the investigator did not reveal the identity of the informant, Ashcroft, in the affidavit supporting the application for a search warrant. Rather, he averred that (1) an undisclosed informant had been present in the residence occupied by Guinn and had examined several marijuana plants being grown there; (2) the informant claimed to be familiar with and able to identify marijuana; and (3) the informant had provided a detailed description of the growing facility, which was repeated in the affidavit. The investigator recounted a police-monitored phone call placed by the informant to a bookstore managed by Cable, where Guinn was also employed. According to the affidavit, an unidentified party answered the phone and conversed with the informant regarding the growing and harvesting of marijuana. Other investigators confirmed the informant's description of the exterior of the residence, including a cover on a basement window.

Guinn contends this affidavit amounted only to the bare, unconfirmed allegations of an undisclosed informant for whom the investigator was unable to vouch. Guinn dismisses the confirmation of the residence's appearance as being information any individual passing on the public sidewalk could have obtained.

We agree with Guinn that the informant's accuracy in describing the exterior of the structure confirms only that he had been outside Guinn's home, not inside and observing marijuana plants. Therefore, we give it little weight. However, we find the confirmation value of the phone call more significant. The investigator related that an officer monitoring the phone call to the bookstore overheard a discussion of hydroponic techniques, that Ashcroft requested an opportunity to again view the plants at Guinn's residence, that the party at the bookstore stated that the plants were gone, explained that they were drying pending sale, and offered to sell a portion of the harvest to Ashcroft.

Although the party at the bookstore was not identified, that party's familiarity with the informant's alleged visit and the contents of Guinn and Cable's residence, and their employment at the bookstore, all support a reasonable conclusion that there was marijuana at the residence occupied by Guinn and Cable. The party's responses implicitly confirmed Ashcroft's visit to the residence and his description of the contents of the residence. Both the detail of the account and the description of the circumstances under which Ashcroft entered the premises provided a credible basis for the informant's report. The veracity of the informant was demonstrated by the phone call. Hence, the magistrate was not confronted solely with bare allegations transmitted from an informant who had not been used previously by the police. Instead, the affidavit may be characterized as including an apparently credible, detailed account confirmed by a follow-up inquiry.

Alternatively, Guinn calls our attention to the statement by the party at the bookstore that the plants were "gone." Taken out of context, that statement might be sufficient to annul any belief that evidence was presently to be found on the premises. However, in the context of the full affidavit, the statement clearly referred only to growing plants. There is nothing in the affidavit to suggest that the harvested, drying plants were not present. To the contrary, the answering party's offer of sale suggests that he still had access to the plants and implicitly, that the plants were to be found at Guinn and Cable's residence. We hold that the affidavit, examined in totality, provided a substantial foundation

for concluding that evidence of criminal activity was probably to be found at Guinn's place of residence.

### III

■ Guinn asserts that the state violated his right to prepare a defense by withholding the identity of the informant-witness, Ashcroft, until shortly before trial. Guinn has not alleged or demonstrated any permanent prejudice from the delay. Such prejudice will not be presumed. Because we are remanding this case, Guinn will have a further opportunity to prepare his defense. Therefore, we need not address this issue further.

### IV

■ Guinn also asserts that the trial court erred by refusing to order Ashcroft to reveal the source of his belief that Guinn posed a threat to him. When Guinn inquired regarding Ashcroft's motivation for calling the police, Ashcroft testified: "The reason I called the 800 number was I had learned earlier from an acquaintance of mine, a friend of mine—." Guinn's counsel interrupted and asked for the name of the "acquaintance." Ashcroft refused to identify the friend. The court refused to order disclosure. Therefore, defense counsel did not pursue this line of questioning. Ashcroft later attributed his knowledge of a threat by Cable and Guinn to harm Ashcroft's wife, and to burglarize Ashcroft's summer home, to this "acquaintance." He represented this fear as being his reason for informing the police of the presence of marijuana in Guinn's home.

Guinn argues that because the specific source was not identified, this testimony was without foundation. Lacking that critical information, Guinn contends that he was unable to rebut the allegation or to impeach the witness. Therefore, he continues, disclosure was mandated. The trial court believed that only the sincerity of Ashcroft's belief was relevant to the matter at hand. He ruled that the specific source of that belief was irrelevant.

Guinn's counsel apparently embarked upon this line of questioning with the intention of attacking Ashcroft's credibility by demonstrating a hypothetical basis for perjury. Guinn's witnesses later testified that Ashcroft used and traded marijuana. In closing, Guinn's counsel suggested that Ashcroft may have been motivated by a desire to distract the police from his own drug-related activities.

Any party, including a criminal defendant, may attack the credibility of a witness. I.R.E. 607. But the mode of interrogation is subject to reasonable control by the court. I.R.E. 611. It has long been the rule that where evidence is offered solely for impeachment, a proper foundation must be laid. *State v. Cox,* 37 Idaho 397, 216 P. 724 (1923). We find nothing in the current Idaho Rules of Evidence to modify this common-law rule.

Here, Guinn does not contend that the prosecutor was aware of the identity of this "acquaintance." Accordingly, we are not confronted by a failure of the state to disclose potentially exculpatory information. Instead, Guinn sought information apparently known only to the state's witness, which if disclosed might be used to rebut allegedly false testimony regarding motivation. Successful rebuttal would, of course, buttress Guinn's claim that Ashcroft was biased.

Guinn may attempt to discover the identity of this acquaintance prior to any new trial. Pretrial discovery in criminal actions is governed by I.C.R. 16, and in particular, the "sufficient showing" standard and procedures of I.C.R. 16(k). We also note that by analogy the principles involved in determining whether to mandate disclosure of an informant's identity may also be applicable. *See generally* Annotation, *Accused's Rights—Informer—Identity,* 76 A.L.R.2d 262 (1961). The relevancy of the information sought will turn primarily upon Guinn's ability to provide a foundation sufficient to call Ashcroft's credibility into question through his allegation that Ashcroft is biased and has asserted a false motivation. As set forth in Rule 16(k), should Guinn raise only a bare allegation without foundation, a protective order may be warranted. On the other hand, if Guinn

is able to offer sufficient foundation for his theory of Ashcroft's motivation, Guinn may, in the discretion of the court, be entitled to an order to compel disclosure of the acquaintance's identity. *See* I.C.R. 16(b)(8).

## V

■ Finally, we turn to an issue raised by the state. Anticipating the possibility of a new trial, the state calls our attention to the trial court's admission of evidence of Ashcroft's prior drug-related activities. The state argues that this evidence was beyond the scope of impeachment permitted by I.R.E. 608. The state urges, by analogy to I.R.E. 609, that prior drug use is not relevant to credibility. In any event, the state contends the court erred in permitting impeachment through testimony of other witnesses who contradicted Ashcroft's denial of the use and sale of marijuana.

We preface our analysis by noting that Guinn did not offer this evidence for the general character of the witness, but, instead, sought to establish a basis for bias grounded in an improper motivation to testify. Guinn contends that Ashcroft reported the presence of marijuana at the Guinn-Cable residence, and alleged that Guinn was involved in growing the marijuana, in order to distract the police from Ashcroft's own illegal drug activities.

Any party may attack the credibility of a witness. I.R.E. 607. The credibility of a witness is always material. Rules 608, 609 and 610 impose limitations upon these general rules. Rules 609 and 610 relate to criminal convictions and religious beliefs, respectively—matters which are not relevant to the case before us. .Therefore, our analysis focuses upon Rule 608, and subsection (b) in particular, which provides:

> Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning (1) his character for truthfulness or untruthfulness, or (2) the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The state argues that this rule would permit, at most, cross-examination of Ashcroft regarding his prior use or dealing in drugs—and then only if the court in its discretion found that conduct to be probative of truthfulness. Guinn's counsel was permitted to cross-examine Ashcroft *and* to call witnesses specifically to contradict Ashcroft's cross-examination testimony in which he denied any illegal drug activity.

We believe the trial court ruled correctly in allowing the cross-examination. Apparently the court was satisfied with Guinn's offer of proof, made out of the presence of the jury, that Ashcroft may have dealt in similar drugs and that this evidence called Ashcroft's credibility into question. Guinn inquired into this specific conduct when cross-examining the witness. The exposure of a witness's motivation is a proper and important function of the constitutionally protected right of cross-examination. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). With sufficient foundation, such an inquiry is permitted by Rule 608(b). *See generally* E. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 6:16 (1984) (use of uncharged misconduct to impeach defendant's credibility).

■ The question whether extrinsic evidence of drug-related activities should have been admitted to contradict Ashcroft's cross-examination testimony presents a more difficult question. Under the comparable federal rule, it appears that a cross-examiner must take the answer provided and may not call other witnesses to impeach the witness regarding collateral or extrinsic matters. *See* McCORMICK, McCORMICK ON EVIDENCE 92 (E. Cleary 3d ed. 1984); J. COTCHETT and A. ELKIND, FEDERAL COURTROOM EVIDENCE 85.2 (1986). However, the credibility of a witness may be attacked either by reference to his general character for truth

and veracity, *or* by showing that the witness is biased or motivated to present false testimony. Some courts have refused to apply Rule 608(b), or to apply it so strictly, where the testimony of others is offered to show a witness's bias or prejudice. *See, e.g., Johnson v. Brewer,* 521 F.2d 556 (8th Cir.1975). *See generally,* McCORMICK, *supra* at 91; COTCHETT, *supra* at 85.1; Annotation, *Right to Impeach Witness in Criminal Case by Inquiry or Evidence as to Witness' Criminal Activity Not Having Resulted in Arrest or Charge—Modern State Cases,* 24 A.L.R.4th 333, § 7 (1983). In this instance, Guinn began his inquiry in an attempt to demonstrate a particular foundation for bias. Guinn did not seek simply to attack the character of the witness for truthfulness.

On remand, we are unwilling to set down a hard and fast rule of admissibility. The matter is committed to the trial court's discretion. For guidance at a new trial, we believe the trial court should refer to both I.R.E. 608(b) and 403. Once again, the critical question before the trial court will be the foundation laid by Guinn for introducing the evidence. If also challenged pursuant to I.R.E. 403, the determination of admissibility will require a balancing by the court between the probative value and the possibility of unfair prejudice to the state. Factors to be considered include: (1) the importance of the testimony of the witness under attack, (2) the relevancy of the act to credibility, (3) the nearness or remoteness of the conduct to the event in question, (4) whether the matter inquired into is such as to lead to time-consuming and distracting proceedings, and (5) any undue prejudice to a party or undue humiliation of the witness. *See* McCORMICK, *supra,* at 92. Should the court determine that the allegation of false motivation is too attenuated, or the attack is simply upon a purely extrinsic matter, the court may exclude the proferred testimony. However, should Guinn provide sufficient foundation for his claim of bias and improper motivation, he may not only inquire of Ashcroft regarding drug-related activities, but may introduce extrinsic evidence to refute Ashcroft's testimony if he again denies

such activities. *See,* McCORMICK, *supra* § 40.

For the reasons set forth in Part I, above, the judgment of conviction of felonious possession of a controlled substance is hereby vacated. The case is remanded for additional proceedings consistent with this opinion.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

I join the Court in setting aside the judgment of conviction and in remanding the case for a new trial. For guidance on remand, the Court has discussed the defendant's attempt to discredit a prosecution witness by showing that the witness used marijuana. The discussion focuses on I.R.E. 608(b). I write separately to offer a critical evaluation of Rule 608(b) and to comment on its application, together with other rules, in the present case.

### I

Impeachment is a vexatious subject because it brings into conflict several objectives of our judicial system. On one hand, we seek to ascertain the truth in factual disputes. If there is reason to doubt the credibility of a witness, the triers of fact should be so informed in order to make an intelligent assessment of the testimony. On the other hand, we also strive for judicial efficiency. If challenges to the credibility of witnesses are not regulated in some fashion, trials may become sidetracked by the pursuit of collateral issues. In addition, we seek to uphold the integrity of judicial processes and to protect the dignity of persons who participate in them. If attacks on witnesses are unrestrained, citizen respect for—and cooperation with—the courts may be impaired.

Before the Idaho Rules of Evidence were adopted, the scope of impeachment was tightly confined. It reflected a dominant concern for efficiency, court decorum and witness protection. Impeachment was regulated by Rule 43(b)(6), I.R.C.P. This civil rule prohibited impeachment of a witness

"by evidence of particular wrongful acts, except ... [by] prior conviction of a felony ... relevant to his credibility...." Thus, it was impermissible to attack the credibility of a witness by attempting to show that he had engaged in bad acts, other than felony convictions, which called his character for truthfulness into question. Of course, if evidence of such bad acts was relevant to another issue in the case, it could be admitted—but only for that limited purpose. *E.g., State v. Dayley*, 96 Idaho 527, 531 P.2d 1172 (1975); *see generally* REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE at C 608, p. 3 (December 16, 1983).

Today the Idaho Rules of Evidence and the similar federal rules reflect an increased concern for the truth-seeking objective of a trial. They broaden the opportunity to challenge the credibility of a witness on the basis of his prior misconduct. Rule 608(b) authorizes the trial judge, in the exercise of discretion, to allow inquiry upon cross-examination into any specific acts which are probative of the witness's character for untruthfulness.

The rule must be read carefully. It is important not only for what it says but also for what it does not say. It says that impeachment to show character for untruthfulness is limited to an inquiry upon cross-examination. The impeaching party may not introduce extrinsic evidence of prior bad acts for this purpose. However, the rule is silent regarding impeachment by specific acts to challenge credibility on other grounds. The rule says nothing, for example, about impeachment to show bias or improper motive for testifying. Commentators on the federal rule have treated this silence as pregnant—that is, as an indication that extrinsic evidence *can* be used to show bias or improper motive on the part of a witness. *See, e.g.,* 1 G. JOSEPH & S. SALTZBURG, EVIDENCE IN AMERICA § 42.3 (1987). Indeed, some jurisdictions have added language to their rules of evidence explicitly distinguishing between impeachment to show character for untruthfulness and impeachment to show bias or improper motive. *See, e.g.,* Rule 609.1, Hawaii Rules of Evidence.

The distinction, simply restated, is between a propensity to lie and a reason to lie. The witness with a character for untruthfulness has a propensity to lie; the witness with a bias or improper motive has a reason to lie. By allowing the issue of untruthful character to be raised only in cross-examination, but allowing bias or improper motive to be shown by extrinsic evidence, Rule 608(b) reveals an hidden hypothesis. The hypothesis is that the truth-seeking objective of a trial is threatened less by a propensity to lie than by a reason to lie.

This hypothesis is grounded in the conventional wisdom that a propensity to lie is a general trait; it may or may not be exhibited on a particular occasion or on a particular subject. In contrast, a reason to lie is specific; it may be triggered by the occasion and subject matter of the trial itself. Accordingly, it is thought to be a more direct threat to the truth-seeking process.

Such conventional wisdom is valid in the abstract; but it breaks down when a propensity to lie actually manifests itself in the courtroom. If a witness on cross-examination denies a prior bad act which indicated a character for untruthfulness, and if it can be shown that the denial is false, the witness's lack of credibility is confirmed. He has demonstrated his willingness to lie under oath during the trial itself. The triers of fact would have strong reason to doubt his testimony on any issue. Their skepticism would be no less abiding than if the impeaching party had presented facts from which a possible bias or improper motive might be inferred. Nevertheless, Rule 608(b) prevents the triers of fact from learning that the witness has testified falsely about a fact relating to his character for untruthfulness. Extrinsic evidence to contradict the false testimony may not be presented. The cross-examiner must accept the witness's answer.

The anomaly is obvious, yet the limitation persists. One reason, perhaps, is that a crafty lawyer may be able to impugn a witness's character on cross-examination,

without resorting to extrinsic evidence. As a distinguished federal judge has noted:

[T]he very question itself can convey the theoretically barred information to the jury. A skillful but unscrupulous cross-examiner can, with a great flourish of impressive-looking papers, ask the witness about incidents in his life in such detail as to time and place as to render his denials completely suspect.

3 J. WEINSTEIN, WEINSTEIN'S EVIDENCE (1984), at 608–25 and 608–26. But if Rule 608(b) is intended, at least in part, to uphold the decorum of the court and to protect the dignity of witnesses, then Judge Weinstein's observation tells us that the rule is not working. It would be a strange logic that justifies a rule-imposed limitation on the ground that the rule can be circumvented anyway.

The other rationale for Rule 608(b) is judicial efficiency. The rule shortens a trial by avoiding a dispute over extrinsic facts relating to a witness's character for untruthfulness. Efficiency is a valid purpose. However, an absolute bar on extrinsic evidence accomplishes this purpose at a cost. It withholds from the triers of fact evidence that the witness has lied on cross-examination. Of course, this cost may be insignificant where the cross-examiner has succeeded in casting aspersions upon the witness by the use of thespian techniques. But in many cases the cross-examiner is neither so skillful nor so unscrupulous. In those cases the cost of an absolute rule is high.

Do we need the rigid restriction imposed by Rule 608(b) in order to achieve judicial efficiency? I think not. Elsewhere in the Idaho Rules of Evidence are provisions granting judges discretionary authority to prevent trials from becoming embroiled in collateral matters. Rule 403 authorizes a judge to exclude evidence, although relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In addition, Rule 611(a) empowers the judge to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

Both of these rules authorize the judge to limit questions or presentations of evidence where the probative value is outweighed by other considerations. In my view, these rules are sufficient to serve the objective of judicial efficiency. There is no persuasive reason to add the narrow and absolute prohibition against extrinsic evidence of untruthful character now found in Rule 608(b). Although this prohibition has an historical lineage, and exists in the rules of many other jurisdictions, we should consider abolishing it in Idaho. It does not serve well the purposes ascribed to it, and it is not consistent with the flexible tenor of the Idaho Rules of Evidence, taken as a whole.

II

Nevertheless, we are constrained to follow Rule 608(b) so long as it remains in its present form. Consequently, in the instant case, it is important to identify the reason for which the defendant sought to impeach the prosecution's witness by showing that he used marijuana. If the object was to show a character for untruthfulness, the impeachment would have been confined to an inquiry upon cross-examination. But if the object was to show bias or improper motive for testifying, then the impeachment would not have been so restricted. Extrinsic evidence could be presented, subject to other rules applicable to evidence in general.

Unfortunately, the district judge did not rule on these potential grounds for impeachment. Although my colleagues today appear to assume that the judge allowed the impeachment to show bias or improper motive, my review of the record indicates that the judge acted upon a different premise. The judge opined that the use of marijuana might have affected the witness's

ability to perceive and to recall events. This was not a ground urged by the defendant's counsel. It subtly transformed the issue of witness credibility into an issue of witness competency. With due respect to the capable trial judge, I believe this approach was erroneous. So far as the present record shows, the defendant was prepared to prove only that the witness had been observed on one or two occasions smoking marijuana in the company of other people. These events allegedly occurred several weeks before the trial. Such evidence, standing alone, would have been entitled to little weight in evaluating the witness's ability to perceive events at an entirely different time and later to recall them at trial.

I submit that the trial judge on remand should shift his focus from competency back to credibility. He must decide whether to allow impeachment directed at character for untruthfulness or impeachment directed at bias or improper motive. His decision will dictate whether, and how, the scope of impeachment may be limited under Rule 608(b).

Even when this determination is made, however, the question will not be fully exhausted. The judge also may consider further restrictions under Rules 403 and 611(a), discussed above. The judge may weigh the impeachment value of the contemplated cross-examination, or of any proffered extrinsic evidence, against its potential to sidetrack the trial or to harass the witness. In striking this balance, the judge must consider the competing values at stake. On the one hand, a criminal defendant's constitutional right of confrontation includes the opportunity to mount a vigorous attack upon the credibility of witnesses against him. *See generally* Davis v. Alaska, 415 U.S. 308 (1974). On the other hand, no party is entitled to prolong the trial unduly or to smear the reputation of a witness with inquiries or evidence having little relation to his credibility on issues before the court.

If a balancing decision is close, the scale should tip in favor of the defendant's right of confrontation. But if the asserted ground for impeachment is contrived or clearly tenuous, the judge should not hesitate to draw the line.

> While a witness probably enjoys no "privilege" as such to be shielded from questions which harass or embarrass, public policy and common decency counsel protection for witnesses against outrageous forays by the cross-examiner into their past conduct. To withhold even such rudimentary protection is to add to the counterincentives against the cooperation of the public upon which the fact-finding process depends heavily, and to cast the courts in an unseemly light.

3 D. LOUISELL & C. MUELLER, FEDERAL EVIDENCE § 305, at 240 (1979). Rules 403 and 611(a) allow such a line to be drawn. In the last analysis, they may prove more important than Rule 608(b) in resolving the impeachment issue presented by this case.